UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.K. IDEMA, EDWARD CARABALLO, and BRENT BENNETT, ) ) ) Plaintiffs, ) ) v. ) ) UNITED STATES DEPARTMENT OF STATE, ) UNITED STATES DEPARTMENT OF JUSTICE, ) FEDERAL BUREAU OF INVESTIGATION, ) UNITED STATES MARSHALS SERVICE, ) DEPARTMENT OF DEFENSE, and ) DEFENSE INTELLIGENCE AGENCY, ) ) Defendants. ) | No. 05 CV 01334 (EGS) |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF IDEMA'S MOTION FOR VAUGHN INDEX**

Plaintiff Idema has moved for the production of a <u>Vaughn</u> index in this Freedom of Information Act ("FOIA") case. Because no scheduling order has been entered, no motion for summary judgment has been filed, and, with respect to the vast majority of the FOIA requests at issue, no information has been withheld from plaintiff pursuant to one of the FOIA's exemptions, plaintiff's Motion should be denied.

**BACKGROUND**

**I.   Procedural Background**

Plaintiffs filed this FOIA case in the Southern District of New York, which <u>sua sponte</u> transferred the case to this Court in light of the then-recent transfer of plaintiffs' pending habeas case. The case was docketed in this Court on July 1, 2005. Within two weeks, on their own initiative, defendants filed a motion for an order setting a time to answer the Complaint, and,

consistent with the Court's order, filed their Answer on August 1, 2005.  See dkt nos. 2-3.

The Court then issued an order directing counsel to confer and file a Rule 16 Report by September 23, 2005.  In response to the Court's order, the undersigned initiated the preparation of a joint status report with John Tiffany, counsel for plaintiff Idema.  In the course of the exchange of drafts of that report, it became clear that although Mr. Tiffany purported to represent only plaintiff Idema, he was insisting on submitting the report on behalf of all "plaintiffs."  Accordingly, defendants filed their own status report with the Court.  See Defendants' Status Report (dkt. no. 7).

Defendants' Status Report set forth a proposed briefing schedule for cross-motions for dismissal and/or summary judgment.  Id. at 4-5.  Pursuant to defendants' proposed schedule, defendants' motion would have been filed on November 30, 2005.  Defendants have remained prepared to file a summary judgment motion once the Court enters a scheduling order in this case.  See, e.g., May 4, 2006 Tr. (Exh. 3) at 17.[1]

Defendants' Status Report also flagged for the Court what has become a persistent issue in this case, and the cause of much of the delay about which plaintiff now complains – the question of who Mr. Tiffany represents and whether and how the other two plaintiffs could prosecute this action pro se from a jail cell in Afghanistan.  See Defendants' Status Report at 1 n.1 (raising representation issue).  Indeed, at the initial status conference in this case, the Court expressed its concern with respect to these representation issues and asked that the pro se plaintiffs submit a signed document to the Court as to how they wished to proceed.  Sept. 30,

---

[1] In light of the multiplicity of FOIA requests and agencies at issue, defendants request at least 45 days in which to prepare their motion.

2005 Tr. (Exh. 1) at 16-17, 22-25.  To date, no such filing has been made.[2]

Although plaintiff complains in his motion about the "repeated and constant continuances" in this case, he not only fails to note the representation issues responsible for much of the delay, but also fails to note that the majority of those continuances were granted at his or his co-plaintiffs' request.  See Docket entries dated Oct. 17, 2005 (hearing date reset at plaintiff's counsel's request); Nov. 3, 2005 (same); March 22, 2006 (same); April 17, 2006 (same); June 21, 2006 (motion for continuance filed by plaintiff Caraballo); see also Jan. 19, 2006, Tr. (Exh. 2) at 12-13 (Tiffany: "I was going to ask for additional time to address th[e] issue" of a possible settlement).[3]

Similarly, plaintiff fails to note that over one year ago, at the Court's suggestion, the undersigned and Mr. Tiffany met to attempt to resolve or narrow the issues in this case.  See Sept. 30, 2005 Tr. (Exh. 1) at 30-31 (Court suggesting meeting); Jan. 19, 2006, Tr. (Exh. 2) at 4, 12, 19 (discussing meeting).  At that hearing, counsel conferred for over an hour, id at 19, and the undersigned provided Mr. Tiffany with defendants' position with respect to the various alleged FOIA requests at issue in this case:  which requests were never received, which were administratively closed, and which were processed, id. at 12, 19.  At the conclusion of that meeting, at the undersigned's suggestion, Mr. Tiffany agreed to provide revised requests for those records still sought by plaintiffs.  Id. at 4 (Tiffany: "Admittedly, there were some things that I

---

[2] Plaintiff's current motion further confuses this issue, as it notes that "counsel is seeking to withdraw in the collateral *habeas corpus* case."  Mot. at 1 n.1.  No such motion to withdraw has been filed in the habeas case; indeed, as the Court is aware, subsequent to filing the instant motion, Mr. Tiffany filed yet another "Emergency Motion for Temporary Restraining Order" on behalf of Idema and, possibly, Bennett, in the habeas case.

[3] Defendants have sought a single continuance.  See docket no. 18.

needed to get to him that . . . I haven't yet"), 12 (Tiffany: "I was going to narrowly focus some of the request[s] to see if this could be resolved"), 19. Notwithstanding Mr. Tiffany's assertion in January that he left his promised response "in [his] office," id at 4, and his statement to the undersigned that he would forward the response shortly, to date Mr. Tiffany has yet to provide the promised material.

Having not heard from Mr. Tiffany, on February 4, 2006, the undersigned sent Mr. Tiffany a letter setting forth the status of the various FOIA requests received by the defendant agencies, along with a settlement proposal – essentially along the lines discussed by counsel the prior September – intended to assist plaintiffs in overcoming the defects in many of their alleged requests. That letter was copied to plaintiffs Caraballo and Bennett. To date, the undersigned has received no response to this letter.

**II.     The Requests at Issue**

The Complaint names six different federal agencies as defendants. Attached as Exhibit 1 to the Complaint is a chart listing 31 different "FOIA letters" allegedly delivered to these various agencies. The other exhibits to the Complaint include various written FOIA requests and correspondence purporting to represent the FOIA requests listed in Exhibit 1 to the Complaint. A comparison of the chart attached as Exhibit 1 to the Complaint with the correspondence attached as Exhibits 3-10 thereto, however, reveals that many of the alleged FOIA requests set forth in the chart are not attached as Exhibits and at least one of the Exhibits is not listed in the chart. Even those Exhibits that appear in some respects to match the entries in the chart often have different dates than those entries, making it difficult to identify precisely which Exhibit corresponds to which entry. Moreover, plaintiffs and Mr. Tiffany often sent duplicative FOIA requests to the

same agency, with different dates, and on different letterhead, making it even more difficult to match up the alleged FOIA requests listed on Exhibit 1 to the Complaint with actual FOIA requests received by the various defendant agencies.

Rather than attempt to identify each of the alleged requests set forth on Exhibit 1, defendants have instead identified any FOIA requests received by defendants from plaintiffs and/or Mr. Tiffany.[4]  Following is a summary of the requests at issue.  Virtually all of this information was previously provided to Mr. Tiffany and plaintiffs Bennett and Caraballo in the undersigned's February 4, 2006 letter to Mr. Tiffany.[5]

Department of State: The majority of FOIA requests listed in Exhibit 1 to the Complaint were allegedly made to the Department of State ("DOS").  DOS has no record of receiving most of those requests.

DOS's FOIA office in Washington did receive requests forwarded to it by Mr. Tiffany on March 15, 2005, as well as a separate request dated April 3, 2005 (and the substantially identical request from Jack Idema dated March 31, 2005).[6]  DOS responded to Mr. Tiffany by separate

---

[4] Mr. Tiffany is not a plaintiff in this action, but many (if not most) of the FOIA requests at issue in this litigation were made by him. See Compl., Exh. 1.  Plaintiffs have no standing to litigate the processing of those requests. See, e.g., McDonnell v. U.S., 4 F.3d 1227, 1238 (3d Cir. 1993) ("only [requestor] has standing to pursue this [FOIA] case"); MAXXAM, Inc. v. F.D.I.C., No. 98-0989(EGS), 1999 WL 33912624 (D.D.C. 1999) (Sullivan, J.) (where, as here, "plaintiff's attorney made the FOIA request in its own name," "only plaintiff's attorney had standing to bring this suit" and "plaintiff lacks standing").  Nevertheless, in the interest of completeness, those requests are discussed below.

[5] As noted above, once a scheduling order is entered, defendants stand prepared to submit appropriate declarations in support of a motion for summary judgment.

[6] After DOS's receipt of the requests forwarded by Mr. Tiffany, the Embassy in Kabul located in its files a handwritten version of one of the three requests forwarded by Mr. Tiffany on March 15, 2005.

letters dated April 25, 2005, seeking additional information and clarification with respect to those requests. Mr. Tiffany has never responded to those letters, and these requests have been administratively closed.

In addition, the Embassy in Kabul located a handwritten letter from the three plaintiffs dated August 11, 2004, asking for various items, including aspirin, ibuprofen, vitamins and various records. (The documents requested in this letter appear to correspond roughly with entry F5 on Exhibit 1 to the Complaint, which plaintiffs allege that a consular official "tore . . . up in front of Idema and Bennett." See Compl., Exh. 1 at 1.) DOS does not consider this a valid FOIA request and has not processed it.

United States Marshal Service: Mr. Tiffany submitted a FOIA request to the United States Marshal Service ("USMS") seeking documents relating to both Jack and Viktoria Idema. He also provided USMS with a Privacy Act waiver executed by Ms. Idema. Accordingly, USMS processed the request insofar as it related to Ms. Idema and provided Mr. Tiffany with nonexempt documents by letter dated November 23, 2005. See also Jan. 19, 2006 Tr. (Exh. 2) at 12 (Tiffany: "In the Marshal's case we received records. . . . relative to Mr. Idema's wife"). As Mr. Tiffany was informed, some information in the records provided to Mr. Tiffany was redacted pursuant to FOIA Exemption 7(C); other records were withheld pursuant to Exemptions 6 and 7(C). As USMS has informed Mr. Tiffany, it is not processing his request insofar as it relates to Mr. Idema because to date Mr. Tiffany has failed to provide USMS an executed Privacy Act waiver for Mr. Idema.

Federal Bureau of Investigation: The Federal Bureau of Investigation ("FBI") has no record of receiving any of the alleged requests identified on Exhibit 1 to the Complaint. See id. at

12 (Tiffany: "Relative to the FBI, their position is they never received a FOIA request").

Department of Defense: The Department of Defense's ("DOD") main FOIA office is in receipt of two FOIA requests from Mr. Tiffany and two requests from Mr. Idema. The requests from Mr. Tiffany are dated March 15 and April 4, 2005, and seek certain records regarding Brendan Donnelly. DOD responded to these requests by email dated March 29, 2005, and by letter dated January 18, 2006. In those responses, Mr. Tiffany was informed that DOD maintains a decentralized FOIA process wherein each component processes its own FOIA requests and that the documents he was seeking would not be maintained by the Office of Secretary of Defense or Joint Staff (covered by the FOIA office to which his requests were directed), and he was provided with FOIA addresses for the Department of the Army and the Defense Intelligence Agency.

The two requests from Mr. Idema were dated March 31 and April 4, 2005 and sought certain records relating to Fox News and/or Linda Vester. DOD responded to these requests by letter dated January 18, 2006, which informed Mr. Idema that no responsive records were found within the Office of the Secretary of Defense. See id. at 12 ("In some instances agencies have come back and said no such records exist").

Defense Intelligence Agency: The Defense Intelligence Agency ("DIA") has received two FOIA requests from Mr. Tiffany seeking various records relating to Brendan Donnelly, dated March 15 and April 4, 2005. By letters dated December 7, 2005, and February 9, 2006, DIA responded to the requests and informed Mr. Tiffany that no responsive records were found.

Department of the Army: The Department of the Army ("DA") is in receipt of a FOIA request from Mr. Tiffany dated April 4, 2005 seeking certain records relating to Brendan Donnelly. DA responded to this request on April 27, 2005, and informed Mr. Tiffany that the DA

itself operates a decentralized FOIA office, and that the documents he requested would likely be located at the office or military installation where the documents originated, if they exist. The letter also informed him that records of an individual's military service, to the extent they exist, are maintained by the National Personnel Records Center and provided him contact information for that office.

<u>United States Central Command</u>: United States Central Command ("Centcom") has received one FOIA request from Mr. Tiffany dated April 4, 2005 (forwarding what are denominated FOIA requests #1 and #2) seeking certain records relating to Brendan Donnelly. Centcom responded to Mr. Idema's request by letter dated August 25, 2006, informing him that it had located no records responsive to his request.

<u>Human Resources Command</u>: In addition, Centcom forwarded Mr. Tiffany's request to the Army's Human Resources Command ("HRC"). HRC responded to Mr. Tiffany's request by letter dated June 6, 2006. That response forwarded to Mr. Tiffany five documents responsive to his request, from which personal information was redacted pursuant to FOIA Exemption 6.

In sum, all of the properly made FOIA requests received by any defendant agency from any of the plaintiffs or Mr. Tiffany have either been processed or administratively closed for the reasons discussed above. The State Department administratively closed the only two valid requests it received from Mr. Tiffany because he failed to respond to DOS's request for additional information. USMS closed Mr. Tiffany's request insofar as it related to Mr. Idema for failure to provide a Privacy Act waiver. The FBI has no record of receiving any FOIA request from plaintiffs. DOD, DIA, DA and Centcom have no records responsive to the requests they received. USMS processed Mr. Tiffany's request with respect to Viktoria Idema and HRC

processed Mr. Tiffany's request with respect to Brendan Donnelly, and both entities provided Mr. Tiffany with all non-exempt responsive records.

## ARGUMENT

Plaintiff seeks an order requiring defendants to produce a <u>Vaughn</u> index within either fourteen or twenty days of entry of the Court's order. <u>Compare</u> Mot. at 1, 15 (fourteen days) <u>with</u> Mot., Proposed Order (twenty days). Because defendants are not responsible for the delays attendant to this case and because a <u>Vaughn</u> index would be premature given that no scheduling order has been entered and no motion for summary judgment has been filed, plaintiff's Motion should be denied. Moreover, an order requiring production of a <u>Vaughn</u> index in this case is particularly unwarranted in light of the fact that with respect to the vast majority of FOIA requests at issue no information has been withheld pursuant to one of the FOIA's exemptions.

Plaintiff makes much of the repeated delays in this case, apparently believing that those delays justify entry of the order he seeks. <u>See, e.g.</u>, Mot. at 2, 6. Yet, as discussed above, the vast majority of the delays in this case have been of plaintiffs' own making – by failing to properly resolve the issue of representation, by repeated requests for continuances, and by failing to respond to defendants' good faith efforts at settlement. Defendants stand ready to file their motion for summary judgment once a scheduling order is entered by the Court. Plaintiff should not be permitted, however, to rely on his own failures and delays as a basis to require the Government to expeditiously produce a <u>Vaughn</u> index or motion for summary judgment. Accordingly, defendants respectfully request that, in the event the Court deems it appropriate to enter a scheduling order at this juncture, defendants be provided forty-five days in which to prepare a motion for summary judgment.

The "purpose of the [Vaughn] index is to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate opportunity to review, the soundness of the withholding" of records or information pursuant to one of the FOIA's exemptions. Fiduccia v. U.S. Dep't of Justice, 185 F.3d 1035, 1042 (9th Cir. 1999) (internal quotations omitted). Given its purpose, courts generally do not require an agency to produce such an index before the agency has asserted a position in litigation, such as filing a summary judgment motion based on having released all non-exempt documents. See Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) (concluding that a plaintiff's "early attempt in litigation of this kind to obtain a Vaughn index . . . is inappropriate until the government has first had a chance to provide the court with the information necessary to make a decision on the applicable exemptions"); United States Comm. on Refugees v. Department of State, 1992 WL 35089 at *1 (D.D.C. Feb. 7, 1992) (concluding that "the preparation of a Vaughn index is unwarranted before the filing of dispositive motions in FOIA actions because the filing of a dispositive motion, along with detailed affidavits, may obviate the need for indexing the withheld documents" (internal quotations and citations omitted)); Stimac v. United States Dep't of Justice, 620 F. Supp. 212, 213 (D.D.C. 1985) (concluding that "the preparation of a Vaughn Index would be premature before the filing of dispositive motions"). Defendants will, of course, file an appropriate Vaughn index or equivalent declaration in support of their motion for summary judgment, when such a motion is made. There is simply no basis, however, for the production of such an index in advance of such a motion, as it would serve no useful purpose.[7]

---

[7] Nor are the cases upon which plaintiffs rely – which generally relate to orders requiring the expedited processing of FOIA requests – relevant here. As explained above, all of the FOIA requests properly received by defendants have either been processed or administratively closed.

A premature Vaughn index is particularly inappropriate in a case such as this, where many of defendants' arguments will have nothing to do with the propriety of withholding records responsive to plaintiffs' request. As discussed above, many of the alleged FOIA requests at issue in this case were either never received, improperly made, made by someone other than plaintiffs, or administratively closed due to the requestor's failure to provide additional information or a Privacy Act waiver. Most of the other requests yielded no responsive documents. In all of these instances, a Vaughn index will not be necessary, as the sole purpose of such an index is to justify the applicability of one or more of the FOIA's exemptions to material that has been withheld from a requestor. See, e.g., United States Comm. on Refugees v. Department of State, 1992 WL 35089 at *1 (D.D.C. Feb. 7, 1992) (denying motion for Vaughn index where, as here, defendant states it will file "a dispositive motion with an accompanying declaration regarding the pertinent facts and any documents withheld from plaintiff."). Only two requests – Mr. Tiffany's request to the USMS regarding Viktoria Idema and his request to Centcom, which was forwarded to HRC, for records relating to Brendan Donnelly – resulted in the withholding of any records of information pursuant to one of the FOIA's Exemptions. And those withholdings will be appropriately justified when defendants file their motion for summary judgment.

## CONCLUSION

For all of these reasons, plaintiff's motion should be denied.

Dated: October 5, 2006.                   Respectfully submitted,

                                                    PETER D. KEISLER
                                                    Assistant Attorney General

---

This is not a case in which the requests at issue are still unprocessed due to a backlog of requests.

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director


   /s/ Ori Lev
ORI LEV  (D.C. Bar No. 452565)
Senior Trial Counsel
U.S. Department of Justice
Civil Division/Federal Programs Branch
Mail:   P.O. Box 883
         Washington, D.C.  20044
Street: 20 Massachusetts Ave., N.W.
         Room 7330
         Washington, DC  20001
Ph:    (202) 514-2395
Fax:   (202) 318-7589
Email: ori.lev@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that he has, this 5th day of October 2006, caused a copy of the foregoing Defendants' Opposition to Plaintiff Idema's Motion for Vaughn Index to be served, via U.S. mail, postage prepaid, upon the following persons at the following addresses:

    Edward Caraballo
    60 Erie Street
    Jersey City, NJ 07302

John Tiffany, attorney for plaintiff Idema will be served via the Court's ECF system.

The undersigned has no current address for plaintiff Brent Bennett.

                                                        /s/ Ori Lev
                                                   Ori Lev