# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

J.K. IDEMA, <u>et al.</u>,            )
                                     )
      Plaintiffs,           )    No. 05 CV 01334 (EGS)
                                     )
      v.                    )
                                     )
UNITED STATES DEPARTMENT OF STATE, <u>et al.</u>,   )
                                     )
      Defendants.           )

---

## DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Defendants hereby move, pursuant to Fed. Rs. Civ. P. 12(b)(1), 12(b)(6) and 56, to dismiss this action and/or for summary judgment with respect to all claims. The reasons supporting this motion are set forth in the accompanying Statement of Material Facts as To Which There is No Genuine Issue and Memorandum of Points and Authorities.

A proposed order is also attached for the Court's consideration.

WHEREFORE, Defendants respectfully request that the instant Motion be GRANTED and the case be DISMISSED.

Dated: March 30, 2007.      Respectfully submitted,

      PETER D. KEISLER
      Assistant Attorney General

      JEFFREY A. TAYLOR
      United States Attorney

      ELIZABETH J. SHAPIRO
      Assistant Branch Director

      /s/ Ori Lev
      ORI LEV, DC # 452565

Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC  20044
Tel: (202) 514-2395
Fax: (202) 318-7589

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.K. IDEMA, <u>et al.</u>, ) | |
| ) | |
| Plaintiffs, ) | No. 05 CV 01334 (EGS) |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF STATE, <u>et al.</u>, ) | |
| ) | |
| Defendants. ) | |

## ORDER

THIS MATTER having come before the Court on Defendants' Motion to Dismiss and/or for Summary Judgment, and good cause having been shown, it is hereby

ORDERED that Defendants' Motion is GRANTED, and it is further

ORDERED that the case shall be dismissed and judgment entered in favor of Defendants.

SO ORDERED.

Dated: _____          _____
                                 EMMET G. SULLIVAN
                                 UNITED STATES DISTRICT JUDGE

**<u>Certificate of Service</u>**

The undersigned hereby certifies that he has, this 30th day of March 2007, caused the foregoing Motion to Dismiss and/or for Summary Judgment, as well as the supporting materials thereto, to be served on the following:


Ed Caraballo
60 Erie Street
Jersey City, NJ 07302

Brent Bennett
c/o Thomas Bumback
64 Hardin Reynolds Road
Critz, VA 24082

John Tiffany, counsel for plaintiff Jack Idema, will be served via the Court's ECF system.

/s/ Ori Lev
Ori Lev

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| J.K. IDEMA, <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | )          No. 05 CV 01334 (EGS) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF STATE, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

_____

**MEMORANDUM OF POINT AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**

<u>TABLE OF CONTENTS</u>

**PAGE**

I.      General Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     The FBI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      Allegations in the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      Requests Received by the FBI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.      Plaintiffs' Claim Against the FBI Should Be Dismissed . . . . . . . . . . . . . . . . 4

III.    Department of State . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Allegations in the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.      Requests Received by the Department of State . . . . . . . . . . . . . . . . . . . . . . . 6

                1.      Request 1178 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                2.      Request 1545 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                3.      Handwritten Notes Located in Embassy Files . . . . . . . . . . . . . . . . 14

                4.      Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        C.      Plaintiffs' Claim Against the Department of State Should Be Dismissed . . . . . . 17

                1.      Requests Never Received by DOS . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                2.      Requests 1178 and 1545 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                        a.      Plaintiffs Bennett and Caraballo's Claims Should be
                                Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                        b.      Mr. Tiffany Failed to Comply with Department
                                Regulations Requiring Signed Privacy Act Waivers
                                for Third-Party Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                        c.      Mr. Tiffany Failed to Reasonably Describe the Records
                                He Was Seeking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ii

3.   The Handwritten Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.   The United States Marshals Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

A.   Allegations in the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

B.   Requests Received by the USMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1.   The Request and Related Correspondence . . . . . . . . . . . . . . . . . . . . . 28

2.   The Processing of Mr. Tiffany's Request . . . . . . . . . . . . . . . . . . . . . . . 32

a.   Records regarding Jack Idema . . . . . . . . . . . . . . . . . . . . . . . . . . 32

b.   Records Regarding Viktoria Idema . . . . . . . . . . . . . . . . . . . . . . 33

c.   Item 7 of the Request . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

d.   Item 5 of the Request . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

3.   Withholding of Records and Information . . . . . . . . . . . . . . . . . . . . . . . 36

a.   Redactions from Documents Disclosed . . . . . . . . . . . . . . . . . . . 36

b.   Documents Withheld In Their Entirety . . . . . . . . . . . . . . . . . . . . 37

4.   Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

C.   The USMS is Entitled to Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . 39

1.   Records Regarding Jack Idema . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

2.   Records Regarding Viktoria Idema . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

a.   Adequacy of Search . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

b.   Redactions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

3.   Records that Do Not Exist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

4.   Documents Withheld in their Entirety . . . . . . . . . . . . . . . . . . . . . . . . . . 48

V.      The Department of Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

        A.      Allegations in the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

        B.      Requests Received by DoD and DoD Components . . . . . . . . . . . . . . . . . . . 51

                1.      Office of the Secretary of Defense and Joint Staff . . . . . . . . . . . . . . 51

                        a.      The Requests from Mr. Idema . . . . . . . . . . . . . . . . . . . . . . . . 53

                        b.      The Requests from Mr. Tiffany . . . . . . . . . . . . . . . . . . . . . . . . 55

                2.      Other DoD Components . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

                        a.      Defense Intelligence Agency . . . . . . . . . . . . . . . . . . . . . . . . . 57

                        b.      The Army . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

                        c.      U.S. Central Command . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

                        d.      Army Human Resources Command . . . . . . . . . . . . . . . . . . . . 62

                3.      Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

        C.      The Department of Defense is Entitled to Summary Judgment . . . . . . . . . . . . 65

                1.      Requests F10, F11, and F18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

                2.      Requests by Jack Idema . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

                3.      Requests by John Tiffany . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

                        a.      Requests to OSD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

                        b.      Requests to other DoD Components . . . . . . . . . . . . . . . . . . . . 69

VI.     Other Requests and Correspondence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Plaintiffs – J.K. Idema, Brent Bennett, and Edward Caraballo – have brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, alleging that they made various FOIA requests to the defendant agencies that have not been properly responded to. Plaintiffs list some thirty-one alleged "requests" in Exhibit 1 to their Complaint. As set forth in greater detail below, judgment should be entered in favor of defendants with respect to each of plaintiffs' alleged requests for a variety of reasons: some of the alleged "requests" are not FOIA requests at all, but merely correspondence relating to other alleged requests; some of the alleged requests were never received by the defendant agencies; some of the alleged requests were improperly made; some of the alleged requests were made by individuals other than plaintiffs; and plaintiffs have failed to exhaust administrative remedies with respect to some of the alleged requests, as they or their counsel have refused to provide additional information requested by the defendants necessary to process the requests. Those requests that were properly made, received by the defendant agencies, and not administratively closed, have been processed, and all non-exempt documents have been provided to the requester.

## I.    General Background

Plaintiffs filed this action in the Southern District of New York. That Court sua sponte transferred the case to this Court. See Docket No. 1 (transfer order from S.D.N.Y.). The body of plaintiffs' Complaint does not identify any specific FOIA requests at issue in this lawsuit.[1] Rather, plaintiffs have attached a chart captioned "Initial FOIA Letters" as part of Exhibit 1 to their Complaint that purports to list the various FOIA requests at issue in this lawsuit. See

---

[1] As a result of the transfer, the Complaint does not appear on the this Court's docket as such. For the Court's convenience, defendants filed a copy of the Complaints and its attached Exhibits as attachments to Defendants' Status Report (Docket No. 7).

Compl., ¶¶ 13-14; Exh. 1.[2]  Although the Complaint states that the correspondence set forth in

Exhibit 1 is attached to the Complaint as Exhibits 2-11, see Compl,. ¶ 14, many of the alleged

FOIA requests set forth in Exhibit 1 are not set forth in the attached Exhibits, and some of the

attached Exhibits are not listed in the Chart.[3]

Plaintiffs' Complaint names six different federal agencies or components as defendants –

the Departments of State, Justice and Defense, as well as the Federal Bureau of Investigation

("FBI"), United States Marshals Service ("USMS"), and Defense Intelligence Agency ("DIA").

Compl., caption and pars. 7-12.[4]  In light of the large number of alleged FOIA requests and

---

[2] Exhibit 1 to the Complaint contains two charts – one captioned "Initial FOIA Letters" and the other captioned "Defendants' FOIA Responses".  Compl., Exh. 1.  Together, these charts are alleged to set forth "an overview of the FOIA correspondence related to this case."  Compl., ¶ 14.  While not entirely clear from plaintiffs' pleading, Defendants have treated each entry on the "Initial FOIA Letter" chart as an alleged FOIA request, and each such entry is addressed below.  References below to Exhibit 1 to the Complaint are to the "Initial FOIA Letter" chart.

[3] Although the body of the Complaint refers to Exhibits 2-11, Compl., ¶ 14, the Exhibit list attached as page 12 of the Complaint only lists 10 Exhibits and defendants have only received 10 exhibits.

[4] The caption of the Complaint lists the United States Department of Justice ("DOJ") as a defendant, but also identifies, and provides an address for, the Department's Executive Office for United States Attorneys ("EOUSA").  Compl., caption.  The body of the Complaint, however, identifies DOJ (and not EOUSA) as the defendant, id, ¶ 8; none of the alleged FOIA requests listed in Exhibit 1 were alleged to have been made to EOUSA, Compl., Exh. 1; and DOJ is the appropriate defendant with respect to those requests allegedly made to the FBI and USMS, which are components of DOJ.  Accordingly, defendants assume that DOJ – and not EOUSA – is the named defendant in this action.  To the extent that plaintiffs purport to assert any claims against EOUSA, those claims should be dismissed both because plaintiffs have not alleged that they made any FOIA requests to EOUSA and because the DOJ would be the appropriate defendant for any such requests in any event.  See 5 U.S.C. § § 552(a)(4)(B) (district courts granted "jurisdiction to enjoin the *agency* from withholding agency records . . .") (emphasis added); S. Conf. Rep. No. 93-1200 (1974), reprinted in 1974 U.S.C.C.A.N. 6285, 6293 ("it is not intended that the term 'agency' be applied to subdivisions, offices or units within an agency").  For ease of reference, we use the term "agency" in this brief to refer to any agency or component listed as a defendant by the plaintiffs; use of this term is without prejudice to the position set forth above

agencies at issue in this case, the discussion below is organized by agency.  For each agency, we (i) set forth the allegations of the Complaint, (ii) describe the factual background with respect to the receipt and processing of any FOIA requests made or allegedly made by plaintiffs or John Tiffany (Mr. Idema's counsel) to such agency, and (iii) explain why summary judgment should be entered in favor of the defendant agency and/or the claims against such agency dismissed.

II.    **The FBI**

    A.    **Allegations in the Complaint**

The sole FOIA requests alleged to have been made to the FBI are listed as entries F7 and F12 on Exhibit 1 to the Complaint.  Those entries identify the requests as having been made in August 2004 and December 21, 2004.   Compl., Exh. 1, F7, F12.  Entry F7 does not provide an address to which it the request was allegedly sent, and entry F12 was allegedly provided to DOS/FBI and FBI/DOJ c/o U.S. Consul Russell Brown (presumably at the U.S. Embassy in Kabul) .  Id.  Exhibit 4 to the Complaint contains a cover page labeled "FOIA Requests to the Federal Bureau of Investigation," but no further documents are attached to the Exhibit.  Compl., Exh. 4.  Exhibit 10 to the Complaint contains a cover page labeled "Plaintiffs' Letter to DOS and FBI December 21, 2004 Regarding FOIA for Exculpatory Evidence and Plaintiffs' Personal Documents Seized Illegally," and contains a letter dated December 21, 2005, and addressed to, inter alia, the "FBI FOIA Officer, J. Edgar Hoover Building, 935 Pennsylvania Avenue, NW, Washington, DC 20535-0001."  Compl., Exh. 10.

―――――――――――――

that the FBI, USMS and, to the extent named in the Complaint, EOUSA, are not "agencies" as that term is used in FOIA and are not proper defendants to this action.

**B.    Requests Received by the FBI**

As explained in the Declaration of David M. Hardy, attached hereto as Exhibit A, the FBI has no record of having received either of the FOIA requests alleged to have been made to it or any other FOIA request from any of the plaintiffs.  Hardy Decl, ¶ 4.  The FBI has conducted a search of its FOIPA Document Processing System ("FDPS"), which houses the FBI's official records concerning receipt of all FOIA/Privacy Act requests, for any requests made by any of the named plaintiffs in this action.  Id.  Any FOIA request properly made to, and received by, the FBI since before July 1, 2004 should appear in the FDPS system.  Id.  This search yielded negative results for the FBI's receipt or possession of any FOIA requests from any of the named plaintiffs in this action from July 1, 2004 to the present.  Id.[5]

**C.    Plaintiffs' Claim Against the FBI Should Be Dismissed**

Under the plain language of the FOIA, an agency's obligation to respond to a request for records does not begin unless and until the agency actually receives a valid FOIA request.  5 U.S.C. § 552(a)(6)(A)(I) ("[e]ach agency, upon any request for records made under paragraphs (1), (2), or (3) of this subsection, shall determine with twenty days ... after *receipt* of any such request to comply with such request.") (emphasis added).  Courts in this circuit have thus repeatedly held that where, as here, the FOIA requester cannot prove that a FOIA request was actually mailed and received, and the agency provides evidence that it never received the request at issue, the case must be dismissed.  See, e.g., Schoenman v. FBI, No. 04-2202 (CKK), 2006

_____

[5] By letter dated February 21, 2006, the undersigned provided plaintiffs with the status of the various alleged requests set forth in Exhibit 1 to the Complaint, and noted, inter alia, that the FBI has no record of receiving any of the alleged requests identified on Exhibit 1 to the Complaint.  See Defs.' Opp. to Pl. Idema's Mot. for Vaughn Index (Docket No. 20) at 3-4.

WL 1126813 (D.D.C. March 31, 2006) at *11-13 (citing cases); Antonelli v. BATFE, No. 04-

1180 (CKK), 2005 WL 3276222, at *5 (D.D.C. Aug. 16, 2005); Carbe v. BATF, No. 03-1658

(RMC), 2004 WL 2051359, at *8 (D.D.C. Aug. 12, 2004) ("Without a request for records, the

agency cannot be held liable for having refused to release records-no such refusal occurred. . . .

If no FOIA request is received, an agency has no reason to search or produce records and

similarly has no basis to respond."); Hutchins v. Dep't of Justice, No. 00-2349 (HHK), 2005 WL

1334941, at *2 (D.D.C. June 6, 2005) ("Without any showing that the agency received the

request, the agency has no obligation to respond to it.").  While courts disagree as to whether

such dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(1), (12)(b)(6), or 56, see

Schoenman, 2006 WL 1126813 at *11-13 (discussing various approaches), there is no

disagreement that dismissal is appropriate in such circumstances.

     As discussed above, the FBI has no record of ever having received plaintiffs' alleged

requests referenced in entries F7 and F12 to Exhibit 1 of the Complaint, or the letter attached as

Exhibit 10 to the Complaint.  (As discussed below, the Department of State – the other alleged

recipient of entries F7 and F12 and Exhibit 10 – also has no record of having received such

requests from plaintiffs.)  Accordingly, plaintiffs' claims against the FBI should be dismissed.[6]

---

[6] An alternate basis for dismissing any claims based on the alleged requests referenced in
entries F7 and F12 of Exhibit 1 to the Complaint is the fact that entry F7 does not provide an
address to which it was sent, and entry F12 was allegedly sent to U.S. Consul Russell Brown, as
opposed to the FBI's FOIA Office as required by Department of Justice Regulations.  See 28
C.F.R. § 16.3 & App. I (providing address for making FOIA requests to FBI); 5 U.S.C.
§ 552(a)(3)(A) (FOIA's disclosure requirements only apply "upon any request for records which
. . . is made *in accordance with published rules stating* the time, *place*, fees (if any), and
procedures to be followed . . . .") (emphasis added); Church of Scientology of California v.
I.R.S., 792 F.2d 146, 150 (D.C. Cir. 1986) (applying Section 552(a)(3)(A)).

III.    **Department of State**

A.    **Allegations in the Complaint**

Exhibit 1 to the Complaint identifies eighteen FOIA requests allegedly made to the

Department of State, labeled F1-F13, F17-F18, F22, F27, and F30.  See Compl., Exh. 1.  Many

of these alleged requests are duplicative of each other or overlap in the documents they seek.

See, e.g., F2-F4 (seeking same material), F10-F11.  At least ten of these requests were allegedly

provided to the U.S. Consul in Afghanistan during consular visits made to the plaintiffs while

they were prisoners in Afghanistan.  See F1-6, F8-F11.[7]  Only four of the eighteen FOIA requests

allegedly made to the Department of State listed on Exhibit 1 are attached as exhibits to the

Complaint.  See Compl., Exh. 2 ("FOIA requests to the Department of State") (appending

requests that roughly appear to correspond to requests F11, F18, F22, F27).[8]

B.    **Requests Received by the Department of State**

The facts regarding the receipt and processing of plaintiffs' alleged FOIA requests to the

Department of State are set forth in the Declaration of Margaret P. Grafeld, which is attached

---

[7] Sandra Ingram, and then Russel Brown, served as the Consuls during the time in question.

[8] The Exhibits attached to the Complaint only roughly correspond to the requests listed on Exhibit 1.  In particular, the dates on the request often do not correspond to the dates listed on Exhibit 1.  Thus, for example, the second document attached as part of Exhibit 2 appears to correspond to entry F18 on Exhibit 1, but the dates do not correspond exactly (F18 listed as dated January 31, 2005; exhibit bears date of January 31, 2004).  Similarly, the fourth document attached as part of Exhibit 2 matches the description set forth in entry F27 on Exhibit 1, but the document is dated March 31, 2004, and entry F27 is alleged to have been dated April 3, 2005.  In many (but not all) instances, this is a result of the apparent mis-dating of the actual FOIA requests, which often bear an incorrect year.  This, as well as the numerous redundant requests listed on Exhibit 1, makes it difficult to ascertain what specific alleged requests are at issue in this lawsuit.  See Fed. R. Civ. P. 8(e)(1).

hereto as Exhibit B.  As set forth therein, and explained in greater detail below, the only requests

or other FOIA correspondence from plaintiffs or Mr. Tiffany properly received by the

Department of State's FOIA office are requests or correspondence that appear to correspond to,

or are otherwise similar to, entries F11, F13, F18 and F27.  Grafeld Decl., ¶¶ 8-23.  Those

requests, which were received from Mr. Tiffany, were responded to and then administratively

closed due to Mr. Tiffany's failure to provide additional necessary information requested by the

Department.  In addition, subsequent to the filing of the Complaint in the instant action, two

additional handwritten documents purporting to be FOIA requests were located in consular files

at the Embassy in Kabul.  Id., ¶¶ 24-26 .  Those documents do not directly correspond to any of

the entries on Exhibit 1 to the Complaint; moreover, as they were not addressed to the

Department's FOIA Office as required by State Department regulations, they are not considered

properly made FOIA requests and have not been processed.  The Department of State has neither

received nor located any other FOIA requests from any of the plaintiffs or Mr. Tiffany.  Id., ¶ 28.

### 1.    Request 1178

The only requests properly received by the Department's FOIA Office consist of two

requests forwarded to that office by Mr. Tiffany.  The first such request, dated March 15, 2005,

and assigned case control number 200501178 (hereinafter, "request 1178"), stated that Mr.

Tiffany was "attorney-of-record" for Jack Idema and attached two other FOIA requests and one

purported FOIA appeal.  A copy of request 1178 and its attachments is attached as Exhibits 1-4

to the Grafeld Declaration.

The first attachment to request 1178 is captioned "FOIA Request #10-31-04," is dated

October 31, 2004, and is nominally from all three plaintiffs, although it is unsigned.  See Grafeld

7

Decl., Exh. 2.  By date and subject matter, the request appears to correspond to entry F11 on Exhibit 1 to the Complaint, and it also appears to correspond to the first document attached as part of Exhibit 2 to the Complaint.[9]  The request seeks documents regarding agreements between the U.S. Government and the Northern Alliance; documents signed by certain Afghan Generals and Ambassadors; documents regarding "immunity in areas of conflict for US Forces;" visitor logs and/or sign in sheets for the U.S. Embassy in Kabul; documents regarding "visits, meetings, discussions" by the U.S. Consul, Ambassador and Regional Security Officer with Judge Abdul Basset Bakhtyari; records regarding "purchases or payments to any member of the Afghan, NDS (Amniat) or Afghan Ministry of Justice" and others; U.S. consul files relating to the plaintiffs; and a copy of the Geneva Convention of 1949 related to Combatant Prisoners of War.  Grafeld Decl., Exh.2.[10]

The second attachment to request 1178 consists of a letter captioned "Appeal of FOIA Request #1 01-10-05," dated January 21, 2005, and is nominally from all three plaintiffs as well as Wahid Rasuli Bandaras, although it too is unsigned.  See Grafeld Decl., Exh. 3.  The letter appears to correspond to entry F13 on plaintiffs' Exhibit 1, as well as to the first document attached as Exhibit 9 to the Complaint.  The letter purports to be an appeal of a prior FOIA request dated October 31, 2004 (i.e., the same request discussed above that was the first

_____

[9] As Exhibit 1 to the Complaint makes clear, entry F11 was a typed version of the alleged handwritten request set forth as entry F10.  Although the Department of State did not receive request F10, both requests are substantially identical.

[10] As with all descriptions of FOIA requests in this brief, the above summarizes the eight categories of documents sought in this request and is not intended to substitute for the actual language of the request.

attachment to request 1178).  Id.[11]

The third attachment to request 1178 is captioned "FOIA Request #1-31-05 Kabul," is dated January 31, 2004, and is again nominally from all three plaintiffs, although it is unsigned. By date and subject matter, the request appears to correspond to entry F18 on Exhibit 1 to the Complaint and to the second document attached as part of Exhibit 2 to the Complaint.  As noted on Exhibit 1 to the Complaint, the request seeks "the same materials" sought in the October 31, 2004 request also attached to request 1178.  See Compl., Exh. 1, entry F18.  Specifically, this request seeks records regarding "purchases or payments to any member of the Afghan, NDS (Amniat) or Afghan Ministry of Justice" and others; the "recent travel" of Prosecutor Fatah to Guantanamo Bay and other documents relating to him; the "upcoming travel" of "former Taliban Judge Abdul Basset Bakhtyari" to the United States; "the purchase of vehicles to any member of Prosecutor Fatah, Judge Abdul Basset Bakhtyari, Amrullah Saleh . . . or any other Afghan Ministry of Justice prosecutor;" U.S. consul files relating to the plaintiffs; and a copy of the Geneva Convention of 1949 related to Combatant Prisoners of War.  Grafeld Decl., Exh. 4.

The Department of State responded to request 1178 by letter dated April 25, 2005.  See

---

[11] The document received from Mr. Tiffany as part of his March 15, 2005 submission is dated January 21, 2005, but captioned "Appeal of FOIA Request #1 - 01/10/05."  Id.  Plaintiffs' Exhibit 1 lists two entries similar to this document.  Entry F13 refers to correspondence allegedly captioned "FOIA Appeal #1 - 1-10-05," which is similar to the caption on the document forwarded by Mr. Tiffany, but entry F13 is allegedly dated January 10, 2005, whereas the document forwarded by Mr. Tiffany is dated January 21, 2005.  Entry F17 on plaintiffs' Exhibit 1 describes correspondence dated January 21, 2005, but allegedly captioned "FOIA Appeal #2 - 1-21-05."  To the extent that entries F13 and F17 represent different alleged correspondence, the Department of State is in receipt of only the document attached as Grafeld Declaration Exhibit 3. Grafeld Decl., ¶ 28.  In any event, both alleged "appeals" seek to appeal the lack of response to the first attachment included with Mr. Tiffany's March 15, 2005 letter, which request was properly responded to by the Department of State, as described below.

Grafeld Decl., ¶¶ 13-16 & Exh. 5.  That letter noted that the Department "has no record of receipt

of any prior FOIA requests from Messrs. Idema, Caraballo, and/or Bennett" and that it is

therefore "premature to process the appeal letter" forward as the second attachment to request

1178.  Id., Exh. 5 at 1.  The Department's letter also noted that it would treat the first and third

attachments to request 1178 as a new FOIA request from Mr. Tiffany, but noted that "before we

can proceed with the processing of this request, we require additional information and

clarification and valid authorizations."  Grafeld Decl., Exh. 5 at 1.  Specifically, the letter

requested clarification regarding Mr. Tiffany's willingness to pay processing fees in light of the

conflicting information provided in the various attachments to request 1178.  Id. at 1-2.  The

letter also noted that "under the provisions of the FOIA and the Privacy Act" private information

about individuals cannot be given to third-parties absent the subject individuals' written consent,

and explained the Department's requirements regarding such written consent.  Id. at 2.  The letter

thus asked Mr. Tiffany either to provide the written consents as described in the letter or to

advise the Department that he is unable to provide such authorizations.  Id. at 3.  With respect to

that aspect of the request seeking the consular files of the plaintiffs, the letter asked that, to

facilitate processing, Mr. Tiffany separate these requests from the rest of the request and file a

separate request for personal data for each individual.  Id.  Finally, the letter sought clarification

regarding the scope and nature of the documents being requested.  Id. at 3-5.[12]  In closing, the

letter noted that "[y]our request has been closed in our system pending receipt of the materials

described in this letter.  If you wish to pursue this request, please send us the authorizations and

_____

[12] The letter also provided an Internet address at which the 1949 Geneva Conventions
could be accessed.  Id. at 4.

10

additional information and clarification described herein."  Id. at 5.

Neither Mr. Tiffany nor any of the plaintiffs has ever responded to this letter.  Grafeld

Decl., ¶ 17.[13]

### 2.    Request 1545

The second request received by the Department of State from Mr. Tiffany was dated April

3, 2005, and assigned case control number 200501545 (hereinafter, "request 1545").  Grafeld

Decl., ¶ 18 & Exh. 6.  The letter, which does not reference Mr. Tiffany's status as Mr. Idema's

attorney, is captioned "Freedom of Information Act Request #1 - 4/3/05 Afghan Appeals Judge

Mr. Mohammad Ismail Abid ('Ismail Abed')", and seeks documents relating to the "recent

travel" of Judge Ismail Abid to the United States; documents relating to the "planned travel

and/or travel arrangements" of "former Taliban Judge Abdul Basset Bakhtyari" to the United

States; and "documentation on why Bakhtyari's visa was denied."  Grafeld Decl., Exh. 6 at 1-2.

This request appears to correspond to entry F27 on Exhibit 1 to the Complaint.[14]

The Department of State responded to request 1545 by letter to Mr. Tiffany dated April

25, 2005.  Grafeld Decl., ¶¶ 19-20 & Exh. 7.  The letter noted, inter alia, that "under the

---

[13] On several occasions, the undersigned has urged Mr. Tiffany to provide the information requested by the Department of State to facilitate resolution of this matter.  Despite repeated statements of his intentions to do so, Mr. Tiffany has not provided any of the information requested.  See Defs.' Opp. to Pl. Idema's Mot. for Vaughn Index (Docket No. 20) at 3-4.

[14] The last document attached as part of Exhibit 2 to the Complaint consists of an unsigned request from Mr. Tiffany addressed to the Department of State seeking the very same documents sought in request 1545.  The request attached as part of Exhibit 2, which is dated March 31, 2004 (which is probably a typographical error, and should read 2005), is identical to the actual request received by the Department of State with the exception of the date and the fact that the document attached to the Complaint is not on Mr. Tiffany's letterhead.  In any event, the only requests received by the Department are attached to Ms. Grafeld's declaration.  Grafeld Decl., ¶ 28.

provisions of the FOIA and the Privacy Act, access to information about individuals, in this case Judge Ismail Abed and former Taliban Judge Abdul Basset Bakhtyari, cannot be given to unauthorized third parties absent the individuals' written consent,"and explained the Department's requirements regarding such written consent.  Grafeld Decl., Exh. 7 at 2.  The letter thus asked Mr. Tiffany either to provide the written consents as described in the letter or to advise the Department that he is unable to provide such authorizations.  Id. at 3.  The letter also sought additional identifying information with respect to the individuals about whom records were sought, including dates and places of birth, as well as "as full [a] description as possible of incidents, meetings, events, persons involved, etc., pertaining to the documents requested."  Id. The letter also advised Mr. Tiffany that some of the material sought in the request appears to have been originated by other agencies, specifically, the Department of Justice and the FBI, and provided him with addresses for those agencies' FOIA offices.  Id. at 3-4.  Insofar as the request sought information regarding the alleged denial of a visa to Judge Bakhtyari, the letter informed Mr. Tiffany that records pertaining to the issuance or refusal of visas or permits to enter the United States are rendered confidential pursuant to 8 U.S.C. § 1202(f), and therefore generally exempt from disclosure under FOIA pursuant to 5 U.S.C. § 552(b)(3).  Id. at 4.  The letter concluded by noting that the request had been administratively closed in the Department's system, and that if, after considering the request for third-party authorizations, the identifying information requested, and the limitations on releasing visa records, Mr. Tiffany still wished to pursue his request, he should resubmit two separate requests (one each pertaining to Judge Abid and Judge Bakhtyari) as well as the additional information requested in the letter.  Id. at 5.

Neither Mr. Tiffany nor any of the plaintiffs has ever responded to this letter.  Grafeld

12

Decl., ¶ 23.

The Department of State also received a FOIA request from plaintiff Jack Idema, dated March 31, 2004 – but postmarked April 5, 2005 and received May 4, 2005 – seeking the exact same records sought by Mr. Tiffany in request 1545. See Grafeld Decl., ¶ 21 & Exh. 8. Indeed, Mr. Idema's request is an almost verbatim duplicate of Mr. Tiffany's request. Compare Grafeld Decl., Exh. 6 with Grafeld Decl., Exh. 8. Mr. Idema, who was incarcerated in Afghanistan at the time of his request, also expressly requested that the Department "provide a copy of [responsive documents and other FOIA correspondence] to [Mr. Idema's] attorney," John Tiffany. Grafeld Decl., Exh. 8 at 2. This request appears to correspond roughly to entry F22 on Exhibit 1 to the Complaint and to the third document attached as part of Exhibit 2 to the Complaint.[15]

In light of the substantially similar nature of Mr. Tiffany's April 3, 2005 request and Mr. Idema's March 31, 200[5] request, and Mr. Idema's request that copies of records responsive to his request also be sent to Mr. Tiffany, a Department of State staff member telephoned Mr. Tiffany on May 5, 2005, the day after Mr. Idema's request was received by the Department. Grafeld Decl., ¶ 22. In the course of that conversation, Mr. Tiffany agreed that Mr. Idema's March 31, 2004 request was duplicative of request 1545 (Mr. Tiffany's April 3, 2005 request), and that the two requests could jointly be considered a single case. Id. Mr. Tiffany also stated that he intended to respond to the Department's April 25, 2005 letter. Accordingly, Mr. Idema's request was considered part of request 1545, which had been administratively closed pending further response from Mr. Tiffany.

---

[15] Although entry F22 lists the date of the request as March 30, 2005, and the request itself is dated March 31, 2004, the request and entry F22 correspond in other respects.

### 3.    Handwritten Notes Located in Embassy Files

Subsequent to the initiation of this litigation, the Department of State undertook a search of the consular files at the U.S. Embassy in Kabul to ascertain whether the Embassy had received any of FOIA requests from any of the plaintiffs.  That search turned up two documents received from one of more of the plaintiffs that reference FOIA.  Grafeld Decl., ¶ 24 & Exhs. 9-10. Neither document appears on Exhibit 1 to the Complaint, neither is addressed to the Department of State's FOIA office, and one is not clearly marked as a FOIA request.

The first document, dated August 11, 2004, and signed by the three plaintiffs, consists of a handwritten note asking for various things, including aspirin, ibuprofen, vitamins, anti-fungal foot powder, paper and pens, and various documents.  Grafeld Decl., Exh. 9.  In some, but not all, instances, the body of the note states that the requests for documents "can also be construed [or regarded or considered] as a FOIA request," and on its last page the document notes that it constitutes a willingness to pay reasonable copy fees in accordance with FOIA.  Id. at 2-3.[16] Other than the passing references to the FOIA in the body of the document, nothing on the face of the document identifies it as a FOIA request, nor was it addressed or sent to the Department of State FOIA Office.  Accordingly, the document was not processed as a FOIA request.  Grafeld Decl., ¶ 25.

The second handwritten document is a letter from plaintiff Edward Caraballo and is dated

_____

[16] The document may correspond to entry F5 on Exhibit 1, although that entry is dated July 2004 and plaintiffs allege that former U.S. Consul Sandra Ingram "tore it up in front of Idema and Bennett."  Compl., Exh. 1 at 1.  The document might also correspond to entry F6, which makes generic reference to "[m]ultiple handwritten FOIA requests . . . in July and early August 2004," but the request set forth as entry F6 is alleged to have been made solely by Jack Idema, and this document is signed by all three plaintiffs.  Compare Compl., Exh. 1 (entries F3, F4, F5 - all distinguishing identity of requestor).

November 2, 2004 and signed November 9, 2004.  Grafeld Decl., Exh.10.  It seeks, in almost

verbatim language, documents regarding the same issues as those sought in the first attachment

to Mr. Tiffany's March 15, 2005 request (request 1178), to which the Department of State

responded by letter dated April 25, 2005, as discussed above.  Compare Grafeld Decl., Exh. 2

(first attachment to request 1178) and 10 (handwritten note).  As the letter was not addressed or

sent to the Department of State FOIA office, and was not received by that office until after the

initiation of the instant litigation, at which time the Department had already responded to the

substantially identical request forwarded by Mr. Tiffany, this document was not processed as a

separate FOIA request.

The Department of State has not received any other FOIA requests or FOIA related

communications from Mr. Tiffany or any of the plaintiffs to this action.  Grafeld Decl., ¶ 28.

### 4.    Summary

For the Court's convenience, the table below lists each of the requests set forth in Exhibit

1 to the Complaint that are alleged to have been made to the Department of State.  With respect

to each such request, the chart notes whether the Department received such a request or a

substantially identical request and, if so, how such request was handled, with reference to the

relevant portions of the Grafeld Declaration.

| Request No. from Exhibit 1 | Received by Dep't of State? | Description/Notes | Grafeld Declaration |
|---|---|---|---|
| F1-F10 | N | Two handwritten documents located in consular files after commencement of litigation do not match up with entries F1-F10. | Grafeld Declaration, ¶¶ 24-26 |

| Request No. from Exhibit 1 | Received by Dep't of State? | Description/Notes | Grafeld Declaration |
|---|---|---|---|
| F11 | Y | First attachment to Tiffany's March 15, 2005 letter (Request 1178).  Substantially identical to entry F10.  Response to Tiffany sought additional information which was never received. Administratively closed. | Grafeld Declaration, ¶¶ 8-10, 13-17 |
| F12 | N | N/A | Grafeld Declaration, ¶ 28 |
| F13 | Y | Second attachment to Tiffany's March 15, 2005 letter (Request 1178).  Response to Tiffany noted "appeal" was premature as no prior requests had been received. | Grafeld Declaration, ¶ 8, 11, 13, 17 |
| F17 | N | Substantially identical to F13. | Grafeld Declaration, ¶ 28 |
| F18 | Y | Third attachment to Tiffany's March 15, 2005 letter (Request 1178).  Seeks material similar to F11.  Response to Tiffany sought additional information which was never received. Administratively closed. | Grafeld Declaration, ¶¶ 8, 12, 13-17 |
| F22 | Y | Document matching F22 but with different date received by Dep't of State.  Per May 5, 2005 phone conversation with John Tiffany, considered part of case 1545.  Substantially identical to F27 and F30. | Grafeld Declaration, ¶¶ 21-22 |
| F27 | Y | April 3, 2005 request from Tiffany (Request 1545).  Response to Tiffany sought additional information which was never received. Administratively closed. | Grafeld Declaration, ¶¶ 18-20 |
| F30 | N | Substantially identical to F22 and F27. | Grafeld Declaration, ¶ 28 |

**C.     Plaintiffs' Claim Against the Department of State Should Be Dismissed.**

**1.     Requests Never Received by DOS**

As noted above, the Department of State did not receive those requests listed as entries F1-F10, F12, F17 and F30 on Exhibit 1 to the Complaint.  As discussed above with respect to the FBI, any claims against the Department of State based on these alleged requests should be dismissed because they were never received by the Department.  See supra Part II.C.

In addition, none of these requests are alleged to have been sent to the FOIA Office to which all FOIA requests to the Department of State are supposed to be made.  See 22 C.F.R. § 171.5(a) (providing U.S. Mail address and facsimile number at which requests are to be made).[17]  With the exception of entry F30 (which was allegedly sent to the Chief FOIA Officer in Washington, D.C., although no address is provided), each of these alleged requests was alleged to have been either hand delivered to the U.S. Consul in Afghanistan (F1-F6, F8-F9) or otherwise delivered to the Embassy (F10, F12, F17).[18]  As discussed above, the FOIA expressly provides

---

[17] The version of this regulation that was applicable in 2004, when many of these alleged requests were made, provided that, in addition to sending requests to the State Department's Information and Privacy Coordinator in Washington, D.C., requests by mail could also "be directed to the Department's field offices and overseas posts."  22 C.F.R. § 171.2(b) (2004).  The regulation provided further, however, that although in such circumstances "routine, unclassified, administrative records *may* be released to the individual if it is determined that such release is authorized," "[a]ny unfilled request *shall be submitted* to the Information and Privacy Coordinator."  Id. (emphasis added).  As discussed below, the provision for mailing requests to overseas posts does not change the analysis above because (a) the majority of the alleged requests were not alleged to have been mailed to the Embassy, (b) the alleged requests were not for "routine, unclassified, administrative records," and (c) the regulation clearly provided that any unfilled requests were to be submitted by the requestor to the Information and Privacy Coordinator in Washington, D.C.  These regulations are discussed further below in connection with the two hand-written requests later identified in plaintiffs' consular files.

[18] Although entry F7 does not specify where or how it was allegedly submitted, the timing and circumstances suggest that it was allegedly sent or provided to the Embassy as well.

that its disclosure requirements only apply "upon any request for records which . . . is made *in accordance with published rules stating* the time, *place*, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A) (emphasis added). The failure to send requests to the address provided in agency regulations is sufficient basis to dismiss any claims based on such claims. See Church of Scientology, 792 F.2d at 150 ("In view of the statutory command that requests be made in accordance with published rules," court finds "no merit in [requester's] contention that the [agency's] failure to inform it earlier that [its] request . . . was misdirected should have led the District Court to require a search" of additional offices); Flowers v. I.R.S., 307 F. Supp. 2d 60, 67-68 (D.D.C. 2004) ("plaintiff's failure to file a request that comports with agency FOIA regulations constitutes failure to exhaust administrative remedies") (citing cases); Dale v. I.R.S., 238 F. Supp. 2d 99, 103 (D.D.C. 2002) ("An agency's obligations commence upon receipt of a valid request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies.") (citing cases); Leytman v. New York Stock Exchange, No. 95-902, 1995 WL 761843, at *2 (E.D.N.Y. Dec. 6, 1995) (failure to allege requests sent to address specified in agency's FOIA regulations basis for dismissal). Cf. Brumley v. United States Dep't of Labor, 767 F.2d 444, 445 (8th Cir. 1985) (determining that agency complied with "FOIA's response time provisions" after advising plaintiff that routing of his request to *appropriate office within agency* would result in short delay "before the ten working day response period would begin running"); Blackwell v. EEOC, No. 2:98-38, 1999 U.S. Dist. LEXIS 3708, at *6 (E.D.N.C. Feb. 12, 1999) ("The time period for responding to a FOIA request . . . does not begin to run until the request is received by the *appropriate office and officer in the agency*, as set forth in the agency's published regulations.");

18

Because the Department of State never received the alleged requests listed as entries F1-F10, F12, F17 and F30 on Exhibit 1 to the Complaint, and because those alleged requests were not alleged to have been sent to the Department's Information and Privacy Coordinator in Washington, D.C. as required by Department of State regulations, any claims based on there alleged requests should be dismissed.[19]

### 2.    Requests 1178 and 1545

Plaintiffs' claims based on those FOIA requests referenced as entries F11, F13, F18, F22 and F27 – which correspond to FOIA case numbers 1178 and 1145 for requests made by John Tiffany – should be dismissed for several reasons.

#### a.    Plaintiffs Bennett and Caraballo's Claims Should be Dismissed

First, plaintiffs Bennett and Caraballo's claims should be dismissed because the only requests received by the Department of State were requests made by John Tiffany on behalf of plaintiff Idema (F11, F13, F18 and F27) or by plaintiff Idema himself (F22). As discussed above, Mr. Tiffany's March 15 FOIA request – which was assigned case number 1178 – indicated that Mr. Tiffany was "attorney-of-record" for Jack Idema, and forwarded two FOIA requests and one purported FOIA appeal of requests alleged to have been previously made by Idema and the other plaintiffs, but never previously received by the Department. The only valid request received, therefore, was from Mr. Tiffany on behalf of Mr. Idema. As noted above, the Department's April 25, 2005 response to Mr. Tiffany expressly noted that the attached requests

---

[19] Any claim based on the alleged request referenced as entry F7 should be dismissed for the additional reason that the alleged requestor – Michael Skibbie – is not a plaintiff in this case. See Maxxam, Inc., v. FDIC, No. 98-0989 (EGS), 1999 WL 33912624, at *2 (D.D.C. Jan. 29, 1999).

had not been received by the Department but that "we will treat the two letters . . . that you forwarded as a new FOIA request *from you*."  Grafeld Decl., Exh. 5 at 1 (emphasis added).  Mr. Tiffany's April 3 FOIA request (F27) – which was assigned case number 1545 – did not state that Mr. Tiffany was making the request on behalf of Mr. Idema or otherwise reference Mr. Idema. When the Department received Mr. Idema's substantially identical request noting that Mr. Tiffany was his attorney (F22), however, it contacted Mr. Tiffany who indicated that the request could be considered part of case number 1545.  In both cases, therefore, the Department was aware that Mr. Tiffany was acting on behalf of Mr. Idema.[20]  But in neither case was the Department aware that the requests at issue were being made on behalf of plaintiffs Bennett or Caraballo.   As only a FOIA requester is a proper plaintiff in a FOIA case, petitioners Bennett and Caraballo's claims should be dismissed.   Maxxam, Inc., v. FDIC, No. 98-0989 (EGS), 1999 WL 33912624, at *2 (D.D.C. Jan. 29, 1999) ("'a person whose name does not appear on a request for records has not made a formal request within the meaning of the statute.  Such a person, regardless of his or her personal interest in disclosure of the requested documents, has no right to receive either the documents, ... or notice of an agency's decision to withhold the documents....'") (quoting McDonnell v. United States, 4 F.3d 1227, 1237 (3rd Cir. 1993)).

       b.    *Mr. Tiffany Failed to Comply with Department Regulations Requiring Signed Privacy Act Waivers for Third-Party Records*

Second, any claims based on these requests should be dismissed because Mr. Tiffany failed to respond to the Department of State's two letters dated April 25, 2005, both of which sought third-party authorizations to release Privacy-Act protected information sought by the

---

[20] See also infra Section IV.C.1 (explaining why Mr. Idema still needed to provide Privacy Act waiver from Mr. Idema.

requests and clarifying information regarding the subject and scope of the requests. With respect to the third-party authorizations, these letters sought information required by Department of State FOIA regulations, and Mr. Tiffany's failure to respond to the letters or otherwise provide the information requested constitutes a failure to comply with the Department's FOIA rules. "In view of the statutory command that requests be made in accordance with published rules, the clarity of those rules, and the reasonableness of the [Department's] treatment of" Mr. Tiffany's request, Mr. Tiffany's failure to respond to the April 25 letters constitutes grounds for dismissal of any claims related to these requests.

As described in greater detail above, the Department responded to Mr. Tiffany's March 15, 2005 and April 3, 2005 FOIA requests by separate letters dated April 25, 2005. See Grafeld Decl., ¶¶ 13-17, 19-20 & Exhs. 5, 7. Each letter sought third-party authorizations to release information regarding the third-parties to Mr. Tiffany: the letter responding to the March 15 request sought such authorizations from the Messrs. Idema, Bennett and Caraballo (whose consular files were sought in the request), and the letter responding to the April 3 request sought such authorizations from the two Afghan judges who were the subject of that request. Id.

The State Departments' FOIA regulations require signed, written authorizations to access records regarding third-parties.

> Except for requests under the Privacy Act by a parent of a minor or by a legal guardian (§171.32(c)), requests for records pertaining to another individual shall be processed under the FOIA and must be accompanied by a written authorization for access by the individual, notarized or made under penalty of perjury, or by proof that the individual is deceased (e.g., death certificate or obituary).

22 C.F.R. § 171.12(a).  See also 22 C.F.R. § 171.32(c)(3).[21]

As noted above, the FOIA's disclosure requirements only apply "upon any request for records . . . made in accordance with published rules stating the . . . procedures to be followed for making a request."  5 U.S.C. § 552(a)(3)(A).

> Failure to comply with agency FOIA regulations amounts to a failure to exhaust administrative remedies, which warrants dismissal.  See Gillin v. IRS, 980 F.2d 819 (1st Cir.1992); Voinche v. Dep't of Air Force, 983 F.2d 667, 669 n. 5 (5th Cir. 1993).  An agency's obligations commence upon receipt of a valid request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies.  See Crooker v. CIA, 577 F. Supp. 1225 (D.D.C. 1984); Lilienthal v. Parks, 574 F.Supp. 14, 17 (E.D. Ark. 1983).

Dale v. I.R.S., 238 F. Supp. 2d 99, 103 (D.D.C. 2002).

Where, as here, a requester fails to provide a third-party's authorization to release the records regarding that third-party to the requester as required by agency regulations, courts have held that the request at issue does not meet these statutory prerequisites and a requester has thus failed to exhaust his administrative remedies.  See, e.g., Flower, 307 F. Supp. 2d at 63, 68-70; Pusa v. FBI, No. 2:99-cv-04603-NM-CW (C.D. Cal. Aug. 3, 1999), slip. op. at 5, attached hereto as Exhibit I.

> c.     *Mr. Tiffany Failed to Reasonably Describe the Records He Was Seeking*

An independent but related basis to dismiss any of plaintiffs' claims that are based on Mr. Tiffany's FOIA requests to the Department of State is the fact that Mr. Tiffany failed to reasonably describe the records he was seeking, even after the Department of State specifically sought clarification with respect to the subjects and scope of his request.  As noted above, the

---

[21] The cited regulation were all in effect when the Department received Mr. Tiffany's requests.

two April 25, 2005 letters to Mr. Tiffany sought not only authorizations to release third-party

records, but also clarifying information regarding the subject and scope of Mr. Tiffany's request.

The letter responding to the March 15 request set forth a series of questions regarding the

information sought in that request, including clarification regarding the time frame for which

certain records were sought, explanations as to terms used in the request, and a request to narrow

one aspect of the request that made reference to "any other Afghan officials" by identifying the

types of officials that would be covered.  Grafeld Decl, ¶ 16 & Exh. 5.  The letter responding to

the April 3 request similarly sought clarification intended to help the Department locate

responsive records; that letter asked for the dates and places of birth of the judges about whom

records were sought, as well as "as full a description as possible of incidents, meetings, events,

persons involved, etc., pertaining to the documents requested."  Id., ¶ 19 & Exh. 7.  Mr. Tiffany

never responded to these letters or provided the information requested.  Id., ¶¶ 17, 23.

The FOIA requires that a request "reasonably describe" the records sought.  See 5 U.S.C

§ 552(a)(3)(A).  And Department of State regulations provide:

> Although no particular request format is required, it is essential that a request
> reasonably describe the Department records that are sought.  The burden of
> adequately identifying the record requested lies with the requester.  Requests
> should be specific and include all pertinent details about the request.  For FOIA
> requests, the request should include the subject, timeframe, any individuals
> involved, and reasons why the Department is believed to have records on the
> subject of the request.

22 C.F.R. § 171.5(c).  See also 22 C.F.R. § 171.32(a) (setting forth information necessary to

process requests for records from Privacy Act systems of records).[22]  The regulations applicable

------

[22] The cited regulations were in effect at the time the Department received Mr. Tiffany's
requests.

to Privacy Act systems of records provide further that "[i]n certain instances, it may be necessary

for the Department to request additional information from the requester . . . ." Id.

      As Judge Lamberth summarized the law in this area:

> A description of the requested documents is adequate if it enables a professional
> agency employee familiar with the subject area to locate the record with a
> reasonable amount of effort.  See H.R. Rep. No. 930876, at 6 (1974), reprinted in
> 1974 U.S.C.C.A.N. 6267, 6271.  Further, a request can be inadequate if it imposes
> an unreasonable burden.  AFGE v. U.S. Department of Commerce, 907 F.2d 203,
> 209 (D.C. Cir.1990). Accordingly,
>
>> it is the requester's responsibility to frame requests with sufficient
>> particularity to ensure that searches are not unreasonably
>> burdensome . . .  The rationale for this rule is that FOIA was not
>> intended to reduce government agencies to full-time investigators
>> on behalf of requesters.  Therefore, agencies are not required to
>> perform searches which are not compatible with their own
>> document retrieval systems.
>
> Assassination Archives and Research Ctr. v. CIA, 720 F. Supp. 217, 219 (D.D.C.
> 1989) (internal citations omitted). . . . .  Not only did Judicial Watch fail to state
> its request with sufficient particularity, it also declined the Bank's repeated
> attempts clarify the request.

Judicial Watch, Inc. v. Export-Import Bank, 108 F. Supp. 2d 19, 27-28 (D.D.C., 2000).

      Similarly, in Dale, Judge Bates held that the requester's failure to provide requested

information to the IRS consisting of "an adequate description of what records he seeks, for what

types of taxes, for what years, and where the records might be located" was sufficient basis for

dismissal of the requester's claim for failure to exhaust administrative remedies.  Dale, 238 F.

Supp. 2d at 103-04.  See also id. at 104 (citing cases holding that "FOIA requests for all

documents concerning a requester are too broad."); Flower, 307 F. Supp. 2d at 63, 68-70.

* * *

      The same logic applied in Judicial Watch, Dale, Flower and Pusa is applicable here as

24

well.  Mr. Tiffany's requests failed to provide the required authorization to release third-party

information to him, and failed to reasonably describe the records sought in those requests, as set

forth in the Department of State's April 25 letters.  These deficiencies were promptly brought to

Mr. Tiffany's attention by the Department, but he never bothered to provide the information

requested or otherwise respond to the Department's April 25, 2005 correspondence.

> As Judge Collyer noted in a similar context:
>
> FOIA is a crucial vehicle for Americans to learn of the activities of their
> Government.  It can be broken, however, and all FOIA requesters injured, by
> discovery-type requests, intransigence in negotiating sensible contours to a broad
> request, and litigation that has little merit.  In this action, Plaintiffs come
> perilously close to breaking the very statute on which they are relying.

Sierra Club v. Dep't of the Interior, 384 F. Supp. 2d 1, 31, (D.D.C. 2004).

### 3.     The Handwritten Requests

As noted above, after the filing of the instant lawsuit, the Department of State reviewed

the consular files at the U.S. Embassy in Kabul to determine if they contained any FOIA

requests, which Exhibit 1 to the Complaint alleges were given or provided to the U.S. Consul in

Afghanistan.  Two handwritten documents were located that reference FOIA: one was a request

for a variety of items, including documents, that referenced FOIA in some instances; the other

was a handwritten FOIA request from plaintiff Caraballo.  Grafeld Decl., ¶¶ 24-26 & Exhs. 9-10.

Neither of these documents forms the basis for a proper FOIA claim in this case.

First, as explained above, neither document is referenced in the Complaint or in Exhibit 1

thereto, or attached to the Complaint.  Accordingly, neither document has been placed at issue in

this lawsuit.

Second, neither document is addressed to the Department of State's FOIA Office in

Washington, D.C., as required by Department of State regulations.  With respect to Grafeld

Exhibit 10, which is dated August 11, 2004, as noted above in regard to the alleged FOIA

requests never received by the Department of State, the regulation in effect in August 2004

required FOIA requests to be mailed to the State Department's Information and Privacy

Coordinator in Washington, D.C..  22 C.F.R. § 171.2(b)(2004).  Compare 22 C.F.R. § 171.5(a)

(current version).  At the time, the regulation provided that requests by mail could also "be

directed to the Department's field offices and overseas posts."  22 C.F.R. § 171.2(b) (2004).  The

regulation provided further, however, that although in such circumstances "routine, unclassified,

*administrative* records *may* be released to the individual if it is determined that such release is

authorized," "[a]ny unfilled request *shall be submitted* to the Information and Privacy

Coordinator."  Id. (emphasis added).

      The provision allowing FOIA requests to be directed to overseas posts does not apply to

render the August handwritten request a valid FOIA request.  First, as is clear from the first

sentence of Section 171.2(b) – which speaks of "[r]equests by mail" – the regulation provides for

*mailing* certain requests to overseas posts.  There is good reason for such a limitation; otherwise,

the regulation would allow for the making of FOIA requests to any member of such an overseas

post – from secretary to Ambassador – at any time and in any context.  Such an interpretation

would open the door to chaos in the Department's FOIA program, not to mention disrupt

overseas officers' abilities to conduct the foreign affairs of the United States.  Plaintiffs'

allegations with respect to entries F1-F6 and F8-F9 are a prime example of this.  Plaintiffs allege

that they gave FOIA requests to consular employees while those individuals were performing

their consular duties and visiting plaintiffs in prison.  Certainly, the provision for submitting

FOIA requests to overseas posts was not intended to cover the handing of notes to consular officials in such circumstances.  Second, the regulation makes clear that such requests to overseas posts are to be for "routine, unclassified, administrative records."   That is not what is sought in the August handwritten request.  Third, the regulation provides that any unfilled requests so submitted were to be re-submitted by the requestor to the Information and Privacy Coordinator in Washington, D.C.[23]  That is, while individuals were free to mail requests for "routine, unclassified, administrative records" directly to an overseas post, the post's failure to respond would not constitute a denial of the request; rather, it would be incumbent upon the requester to "submit" the request to the Department's FOIA office in Washington.  In essence, the provision allowing for the mailing of such requests to overseas posts was intended to provide a simpler process by which to seek simple documents from the post as an accommodation to requesters overseas.  It was not intended to supplant the FOIA office's central role in implementing the Department's FOIA program.  Cf. Grafeld Decl., ¶¶ 2, 4-7.

By the time that the second handwritten request was given to the Consul,[24] the Department's FOIA regulations had been amended, and no longer provided for even the accommodation described above.  As of November 3, 2004, the Department's FOIA regulations provided – as they do now – that all FOIA requests were to be submitted to the Information and

---

[23] That the regulatory intent is to require the requestor to submit the request to the FOIA office in Washington is clear from the structure of the regulation, in which a series of actions phrased in the passive tense all relate to actions by the requester.  See 22 C.F.R. § 171.2 (2004) ("Requests should be addressed;" "requests may be directed;" "unfilled request shall be submitted" to Washington).

[24] The date on the last page of the request, when it was allegedly signed in the presence of the Consul, is November 9, 2004.

Privacy Coordinator in Washington, D.C.  See 22 C.F.R. 171.5(a); 69 Fed. Reg. 63934 (Nov. 3,

2004) (adopting regulatory change).

   The failure to submit the two handwritten FOIA requests to the Department's FOIA

office in Washington as required by Department regulations is fatal to any claims based on those

requests.  See Church of Scientology, 792 F.2d at 150; Maydak v. U.S. Dep't of Justice, 254 F.

Supp. 2d 23, 44-45 (D.D.C. 2003).

   Because the two handwritten requests are not referenced in the Complaint or its Exhibits

and were not properly submitted FOIA requests, any claims based on those request should be

dismissed.

## IV.    The United States Marshals Service

### A.    Allegations in the Complaint

   Exhibit 1 to the Complaint identifies four entries allegedly sent to the USMS: F14, F15,

F19, and F20.  Compl., Exh. 1.  One of these requests is alleged to have been sent to the USMS

office in North Carolina, see entry F14, one request is alleged to have been sent to the USMS

office in Washington, see entry F15, and two of the entries refer to further correspondence related

to entry F15 and do not describe FOIA requests at all, see entries F19, F20.

### B.    Requests Received by the USMS

#### 1.    The Request and Related Correspondence

   As explained in the attached declaration of William E. Bordley, attached hereto as

Exhibit C, no USMS office in North Carolina received any FOIA request from Mr. Tiffany

directly.  Bordley Decl., ¶ 29.[25]  The USMS did receive, on January 11, 2005, a faxed FOIA

request letter from Mr. Tiffany dated January 10, 2005.  Id., ¶ 2 & Exh. 1.  The letter appears to

correspond to entry F15 on Exhibit 1 to the Complaint, and to the first document attached as part

of Exhibit 5 to the Complaint.  The letter stated that Mr. Tiffany is the "attorney-of-record" for

Jack Idema and that, for purposes of this FOIA request, he also represented "the interests of Mr.

Idema's wife," Viktoria.  Id.  The letter sought the following records: (1) all documents regarding

Mr. and Mrs. Idema, including documents pertaining to the arrest of Viktoria Idema on January

7, 2005; (2) all documents "between the [USMS] and the FBI, and/or any U.S. Attorney's Office,

and/or any other government agencies, or any private individual" pertaining to Mr. and Mrs.

Idema "and/or arrest, and/or events leading up to the arrest;" (3) all documents "between the U.S.

Government and the State of Texas, to include, but not limited to, the TDCJ (Texas Department

of Criminal Justice)," specifically including "PIN requests and PIN correspondence, SLETS,

MLTS, LETS teletype correspondence, warrant transfers, and associated paperwork," as well as

documents related to communication between any Texas state employee relating to the arrest;

(4) USMS employment rosters for the State of North Carolina for January 7, 2005; (5) vehicle

logs for all vehicles assigned to any member of the USMS working in or around Fayetteville,

North Carolina on January 7, 2005; (6) "releaseable" employment information  for all U.S.

Marshals or other federal government employees who were involved in any way with the arrest;

(7) after-action reports, evaluations, awards, reprimands, related to the arrest or to the Marshals

---

[25] Interestingly, a copy of the request allegedly sent to North Carolina (F14) is not attached
as part of Exhibit 5 to the Complaint, although the other FOIA related USMS correspondence is
so attached.  In any event, the alleged request listed as entry F14 is identical to the request sent
to, and received by USMS headquarters in Washington, DC (F15).  As also described below, the
USMS searched for records responsive that later request at all North Carolina USMS offices.

who conducted the arrest; and (8) all documents, including emails and electronic files, concerning Mr. and Ms. Idema, or any of a number of listed variants of their names.  Id.  The letter also requested the "alleged warrants, which the U.S. Marshals claimed they possessed at the time, and have since failed to produce."  Id.[26]

The USMS responded to Mr. Tiffany's request by letter to him dated January 19, 2005, advising him that in order for the USMS to process his request, Mr. Tiffany needed to provide signed, written authorizations from Jack and Viktoria Idema authorizing disclosure of any USMS records pertaining to them to Mr. Tiffany.  Bordley Decl., ¶ 4 & Exh. 2.  A Department of Justice Certification of Identity Form, DOJ-361, which may be used to provide the requested written authorization, was enclosed with the letter.  Id.  Due to an administrative error, likely the result of the receipt of Mr. Tiffany's request via both facsimile and U.S. mail, the USMS again requested the Idemas' written authorization to disclose any records pertaining to them by letter dated January 25, 2005.  Bordley Decl., ¶ _ & Exh. 3.

By facsimile dated February 4, 2005, Mr. Tiffany forwarded to the USMS an executed Certification of Identity Form, DOJ-361, for Viktoria Idema, signed on February 3, 2005, authorizing the release of records relating to Ms. Idema to Mr. Tiffany.  Bordley Decl., ¶ 6 & Exh. 4.  By letter dated February 16, 2005, the USMS acknowledged receipt of Viktoria Idema's Privacy Act waiver.  Bordley Decl., ¶ 7 & Exh. 5.  As Mr. Tiffany had failed to provide a similar waiver from Jack Idema, Mr. Tiffany was advised that his failure do so would result in the USMS taking no further action on his request.  For Mr. Tiffany's convenience, another DOJ-361

---

[26] On January 18, 2005, the USMS received, via U.S. mail, a duplicate copy of Mr. Tiffany's January 10, 2005 request.  Bordley Decl, ¶ 3.

form was enclosed.  Id.

Mr. Tiffany responded by letter dated March 7, 2005.  Bordley Decl., ¶ 8 & Exh. 6.  His response asserted that (1) his status as Mr. Idema's attorney "obviates [him] of any obligation to file a DOJ-361 as a pre-requisite to [the USMS's] compliance with [his] FOIA request;" and (2) Mr. Idema's incarceration in Afghanistan made it impossible for him to send or receive a signed DOJ-361 on his behalf.  Id.  Neither Mr. Tiffany nor Mr. Idema (nor anyone else) has ever provided the USMS with a signed, written authorization to release records pertaining to Mr. Idema to Mr. Tiffany.  Id.

By letter dated November 23, 2005, the USMS responded to Mr. Tiffany's request. Bordley Decl., ¶ 9 & Exh. 7.  The response reiterated that the USMS would take no further action with respect to Mr. Tiffany's request insofar as it seeks records pertaining to Jack Idema until such time as Mr. Tiffany provided a signed, written authorization from Mr. Idema permitting the release of such information to Mr. Tiffany.  Id.  The response also informed Mr. Tiffany that the USMS located five documents consisting of a total of nine pages responsive to items 1, 7 and 8 of his request.  Those documents were enclosed with the response; as described further below, the names of law enforcement officers and the names of, and information identifiable to, other third party individuals were redacted from the documents pursuant to exemption 7(C) of the FOIA.  Id.  The response also informed Mr. Tiffany that the USMS had located no records responsive to items 2, 3 and 5 of his request.  Id.  Finally, the response informed Mr. Tiffany that the records responsive to items 4 and 6 of his request – which sought the USMS employment roster for the entire state of North Carolina and employment information for Marshals and other federal government employees who participated in Viktoria Idema's arrest – were being withheld

31

from disclosure pursuant to FOIA Exemptions 6 and 7(C).  Id.

### 2.    The Processing of Mr. Tiffany's Request

#### a.    Records regarding Jack Idema

As just discussed, Mr. Tiffany was advised that no further action was taken on his request

insofar as it sought information pertaining to Jack Idema in light of Mr. Tiffany's failure to

provide a written authorization from Mr. Idema authorizing the USMS to release Privacy Act-

protected information about Mr. Idema to Mr. Tiffany.  In reaching the determination that any

records regarding Mr. Idema that might exist in the records and files of the USMS would not be

releasable to a third-party absent a Privacy Act waiver from Mr. Idema, the USMS considered the

fact that if any records pertaining to Mr. Idema do exist in the records and files of the USMS,

they would likely be non-public records maintained in the Warrant Information Network (WIN),

JUSTICE/USM-007 system of records or the Prisoner Processing and Population

Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005 system of records.

Bordley Decl., ¶ 10.  Records maintained in these systems of records are compiled for law

enforcement purposes in connection with the USMS's execution of Federal arrest warrants,

investigation of fugitive matters, and receipt, processing, transportation and custody of federal

prisoners, see 28 U.S.C. § 566(e)(1)(B); 28 C.F.R. § 0.111(a)(j)(k),(q); 18 U.S.C. § 4086.

Bordley Decl., ¶ 10.  Records maintained by the USMS in the WIN and PPM/PTS systems of

records consist of personal data, including criminal history records, on the individual subjects of

investigatory interest and their associates, witness interviews, and other records documenting

efforts by the USMS to locate and apprehend individual fugitives and other wanted persons; and

records of criminal custody by the U.S. Marshal.  Id.  Given the private nature of such

information, information about an individual contained in the WIN and PPM/PTS systems would not be released without the individual's consent, except to further law enforcement purposes. Id. See also id., ¶ 11 (describing applicability of Privacy Act to WIN and PPM/PTS systems of records). Because the release of any records pertaining to Mr. Idema that might be contained in the WIN and/or PPM/PTS systems of records would be prohibited, the USMS did not conduct a search for such responsive records relating to Mr. Idema, but instead informed Mr. Tiffany that no further action would taken on his request insofar as it pertained to records relating to Mr. Idema. Bordley Decl., ¶¶ 10-12.

b.     *Records Regarding Viktoria Idema*

Items 1, 2, 3, 7, and 8 of Mr. Tiffany's request all sought records concerning Viktoria Idema and/or her arrest. Bordley Decl., Exh. 1. Accordingly, the USMS searched for any and all records regarding Ms. Idema in those systems of records where responsive records were likely to be found, if they existed. Id., ¶ 13. Specifically, the USMS conducted a search for records concerning Viktoria Idema in the USMS offices identified in Mr. Tiffany's request, i.e., the Eastern, Middle, and Western Districts of North Carolina, the Eastern, Northern, Southern, and Western Districts of Texas, as well as USMS headquarters in Washington, D.C. Id. In conducting these searches, the USMS used Viktoria Idema's name, as well as each of the aliases or variants of her name and each of the personal identifiers (e.g., date of birth and social security number) provided in Mr. Tiffany's request. Id. See Exhibit 1 at 2-3 (Item 8; listing 5 variants of her name and various identifiers). Such a search would turn up any records regarding Ms. Idema as well as any records relating to her arrest. Id.

The searches in the district offices were conducted by USMS FOI/PA Liaisons in the

33

above-listed offices, who routinely coordinate and/or conduct document searches in their district

offices in response to FOIA and PA requests and are knowledgeable about the records and files

maintained by their particular office.  Id.  The USMS district offices listed above searched for

responsive records in the WIN and PPM/PTS systems of records described above, as those are

the systems of records likely to contain documents responsive to Mr. Tiffany's request.  Id.

Decentralized segments of these two systems are located in each of the 94 USMS district offices

and consist of the computerized databases and the manual file records corresponding to the

electronic indices.  Id.  These systems of records are searched by an individual's name and/or

personal identifier.  Id.  As a result of this search, records pertaining to Viktoria Idema were

located by the USMS office in the Eastern District of North Carolina.  Id.  As discussed further

below, these records were produced to Mr. Tiffany.

In addition to the search for documents in the USMS district offices described above, the

USMS FOIA staff also searched the USMS Headquarters Investigative Services WIN system of

records and the Judicial Security Division's Inappropriate Communications/Threat Information

System (IC/TIS), JUSTICE/USM-009, system of records, in an effort to locate any and all

records pertaining to Viktoria Idema.[27] Id., ¶ 15.  These are the only headquarters systems of

records deemed reasonably likely to contain documents regarding Viktoria Idema such as those

---

[27] Records maintained in the IC/TIS system of records are compiled for law enforcement
purposes in connection with the protection of Federal jurists, court officers, and other threatened
persons involved in the judicial process.  IC/TIS files encompass persons who have
inappropriately communicated with, directly threatened, or pose a threat to USMS protectees,
including federal judges, prosecutors, and other court officials, USMS and other law enforcement
officers, courtroom security, and federal property and building, associates of such individuals,
and individuals reported by state and local agencies to the USMS who have threatened to harm
state or local judicial officials.  Id.

sought in Mr. Tiffany's request.  Id.  As with the searches of the WIN and PPM/PTS systems of

records by the USMS district office, the searches of the WIN and IC/TIS systems of records at

USMS headquarters were conducted using Viktoria Idema's name, as well as each of the aliases

or variants of her name and each of the personal identifiers (e.g., date of birth and social security

number) provided in Mr. Tiffany's request.  Id., ¶ 16.  As a result of this search, additional

records pertaining to Viktoria Idema were located by the USMS.  Id.  As discussed further below,

these records were produced to Mr. Tiffany.  The documents provided to Mr. Tiffany included a

State of Texas arrest warrant for Mr. Idema but no other warrants.  Id., ¶ 17.

No records responsive to items 2 and 3 of the request – seeking "documents between" the

USMS, various government agencies and others regarding Mr. and Ms. Idema, and certain

"documents between" the U.S. government and the State of Texas – were located by the USMS.

Id.

### c.      Item 7 of the Request

Item 7 of Mr. Tiffany's request sought "[a]ll after-action reports, evaluations, awards,

reprimands, related to the arrest or to the Marshals who conducted the arrest."  Bordley Decl.,

Exh. 1.  The searches conducted above located the report of investigation describing the arrest

(i.e., the "after-action report" sought in the request) as that report was related to the arrest, and

would have similarly identified any other documents related to the arrest of Ms. Idema.  Id., ¶ 18.

The rest of item 7 of the request seeks records related to the individuals who conducted the

arrest.  Id.  None of those individuals, however, were U.S. Marshals.  Id.  The USMS, therefore,

would have no records regarding "evaluations, awards, reprimands" for such individuals.  Id.

Accordingly, no documents responsive to this aspect of Mr. Tiffany's request were located.  Id.

> d.    *Item 5 of the Request*

Item 5 of Mr. Tiffany's request sought "[v]ehicle logs for all vehicles assigned to any member of the [USMS] working in or around Fayetteville, North Carolina on January 7, 2005." Bordley Decl., Exh. 1.  Fayetteville is in the Eastern District of North Carolina. Id., ¶ 19.  The USMS office in the Eastern District of North Carolina does not maintain vehicle logs for the vehicles assigned to its employees.  Id.  Accordingly, no records responsive to this aspect of Mr. Tiffany's request exists.

### 3.    Withholding of Records and Information

As noted above, the USMS responded to Mr. Tiffany's request by letter dated November 23, 2005, and released nine pages of documents responsive to items 1, 7, and 8 of his request. Bordley Decl, ¶ 20 & Exh. 7.  Of the nine pages, six pages were released in their entirety, and three pages were released with information redacted and withheld pursuant to Exemption 7(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C).  Id.  In addition, records responsive to items 4 and 6 of Mr. Tiffany's request were withheld in their entirety pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C).  Id.  No responsive records were located with respect to items 2, 3 and 5 of the request.  Id.

> a.    *Redactions from Documents Disclosed*

As noted, three of the pages released to Mr. Tiffany on November 23, 2005, had information redacted pursuant to FOIA Exemption 7(C), which exempts from disclosure "records or information compiled for law enforcement purposes" to the extent that such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C).  The information so redacted consisted of the following: (1) a one-page Status

36

Report dated January 11, 2005, had the name of the law enforcement officer who prepared the report redacted from it; and (2) a two-page Report of Investigation dated January 11, 2005, had the names of law enforcement officers, and the names of, and information identifiable to, third party individuals redacted from it.  Bordley Decl., ¶¶ 21-23.  Specifically, the name of the law enforcement officer who prepared the report of investigation, his signature, and the name of the criminal investigator who approved the report were redacted; the North Carolina registration numbers of two vehicles referenced in the report, and one of the vehicle owners' names, were redacted; the names of three third-party individuals referenced in the report were redacted; and the name of a Fayetteville, N.C. police officer referenced in the report was redacted.  Id.

*b.      Documents Withheld In Their Entirety*

As noted above, the USMS withheld from disclosure the USMS employment roster for the State of North Carolina, as well as the employment information of those Marshals and/or other federal government employees who participated in the arrest of Viktoria Idema on January 7, 2005, pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C).  Bordley Decl., ¶ 25.  The USMS believes that public disclosure of the names of USMS employees, as well as the names and other employment information pertaining to USMS and other government employees who may have participated in the arrest of Viktoria Idema, reasonably could be expected to subject such individuals to unnecessary public attention, scrutiny, harassment, and annoyance, both in the course of performing their official duties and in their private lives, and could possibly pose a danger to their life or physical security.  Bordley Decl., ¶ 27.  Nor would any apparent public interest be served by the disclosure of such information, as it is unlikely to shed light on the operations of government.  Id.  Indeed, the public interest weighs in favor of

37

non-disclosure to foster the efficient performance of official duties regarding the receipt, processing, transportation and custody of prisoners, the execution of Federal arrest warrants, and the investigation of fugitive matters.  Id.  The USMS correctly concluded that absent a legitimate public interest, disclosure could reasonably be expected to constitute a clearly unwarranted invasion of personal privacy.  Id.

Other than the records discussed above, no other records responsive to Mr. Tiffany's requests were located as a result of the searches conducted by the USMS.  Id., ¶ 28.

### 4.    Summary

For the Court's convenience, the table below lists each of the requests set forth on Exhibit 1 to the Complaint that are alleged to have been made to the USMS.  With respect to each such request, the chart notes whether the USMS received such a request or a substantially similar request and, if so, how such request was handled, with reference to the relevant portions of the Bordley Declaration.

| Request No. from Exhibit 1 | Received by USMS? | Description/Notes | Bordley Declaration |
|---|---|---|---|
| F14 | N | Identical to F15 | Bordley Decl., ¶ 28 |
| F15 | Y | Response and responsive documents sent to Mr. Tiffany November 23, 2005 | Bordley Decl., ¶¶ 2-9 |
| F19 | Y | Not a FOIA request | Bordley Decl., ¶ 6 |
| F20 | Y | Not a FOIA request | Bordley Decl., ¶ 8 |

### C.     The USMS is Entitled to Summary Judgment

### 1.     Records Regarding Jack Idema

As described above, the USMS repeatedly asked Mr. Tiffany to provide a Privacy Act

waiver from Jack Idema authorizing the release of records regarding Mr. Idema to Mr. Tiffany.

Bordley Decl., ¶¶ 4, 7  & Exhs. 2, 5.  Mr. Tiffany never provided such an authorization.  Id.,¶ 8.

Accordingly, the USMS did not conduct a search for records regarding Mr. Idema in response to

this aspect of Mr. Tiffany's request, and did not process it further.  Id., ¶ 11.  No search was

conducted in response to this aspect of Mr. Tiffany's request because any records regarding Mr.

Idema that might exist in the two systems of records likely to contain such records – the WIN and

PPM/PTS systems of records – would be exempt from disclosure pursuant to FOIA Exemption

7(C).  Indeed, even disclosing whether or not any such records exist could implicate the privacy

rights that Exemption 7(C) is intended to protect.  For these reasons, as explained more fully

below, the USMS is entitled to summary judgment with respect to that aspect of Mr. Tiffany's

request that sought records regarding Mr. Idema.

The Supreme Court has expressly held "as a categorical matter that a third party's request

for law enforcement records or information about a private citizen can reasonably be expected to

invade that citizen's privacy, and that when the request seeks no 'official information' about a

Government agency, but merely records that the Government happens to be storing, the invasion

of privacy is 'unwarranted.'"  United States Dep't of Justice v. Reporters Committee for the

Freedom of the Press, 489 U.S. 749, 780 (1989).  Thus, where, as here, a FOIA requester seeks

law enforcement records concerning a third-party without providing a Privacy Act waiver from

that third-party, the agency can categorically withhold any responsive records, since such records

39

would by definition implicate the third-party's privacy interests, and there is no countervailing public interest in disclosure.

Exemption 7(C) of the FOIA protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To properly invoke Exemption 7(C) , an agency must first demonstrate that the records in question, if they exist, were compiled for law enforcement purposes. See 5 U.S.C. § 552(b)(7). To satisfy this threshold requirement, an agency must show that the records were generated for the purpose of enforcing matters of civil, criminal, or administrative law. See, e.g., Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger, 502 F.2d 370, 373 (D.C. Cir. 1974); Rural Hous. Alliance v. USDA, 498 F.2d 73, 81 & n.46 (D.C. Cir. 1974).

The can be no doubt that, as described above, the records contained in the WIN and PPM/PTS systems of records were compiled for a law enforcement purpose. See Bordley Decl., ¶ 10. Nor can there be any doubt that the rationale set forth in Reporters Committee is equally applicable to such records, which are compiled in the course of the USMS's execution of Federal arrest warrants, investigation of fugitive matters, and receipt, processing, transportation and custody of federal prisoners, and which include personal data, including criminal history records, on the individual subjects of investigatory interest and their associates, witness interviews, and other records documenting efforts by the USMS to locate and apprehend individual fugitives and other wanted persons, as well as and records of criminal custody by the U.S. Marshal. Id. Individuals have an understandable and continuing interest in keeping such information private.

Id.  Some of the information, such as personal and criminal history, is highly sensitive personal information, the disclosure of which could cause embarrassment, harm, or exposure to unwanted or derogatory publicity and inferences.  Id.  It would also renew public curiosity and speculation concerning the individual's criminal history.  Id.  See also Fizgibbon v. CIA, 911 F. 2d 755, 767 (D.C. Cir. 1990) (Individuals have a "strong interest . . . in not being associated unwarrantedly with alleged criminal activity."); Quinon v. FBI, 86 F. 3d 1222, 1230 (D.C. Cir. 1996) (internal citations omitted) ("[p]ersons involved in [criminal] investigations – even if they are not the subject of the investigation – have a substantial interest in seeing that their participation remains secret."); Fund for Constitutional Government v. National Archives & Records Service, 656 F.2d 856, 865 (D.C. Cir. 1981) ("The disclosure of [the fact that specific individuals were the subjects of a criminal investigation] would produce the unwarranted result of placing the named individuals in the position of having to defend their conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings."); Baez v. Department of Justice, 647 F.2d 1328, 1338 (D.C. Cir. 1980) ("There can be no clearer example an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of an FBI investigation."); Cong. News Syndicate v. DOJ, 438 F. Supp. 538, 541 (D.D.C. 1997) ("an individual whose name surfaces in connection with an investigation may, without more, become the subject of rumor and innuendo.").  It is clear, therefore, that in this case the threshold would be satisfied by records responsive to the request, if any exist, due to the nature of the function of the USMS as a law enforcement agency and the systems of records where any responsive records are likely to be located.

The remaining consideration under Exemption 7(C) is whether releasing any responsive

41

records from such systems of records concerning Jack Idema "could reasonably be expected to constitute an unwarranted invasion of personal privacy." In most cases, this determination necessitates a balancing of the individual's right to privacy against the public's interest in disclosure. See Reporters Comm., 489 U.S. at 762; see also SafeCard Servs. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991). No such balancing is necessary, however, when a request seeks law enforcement records concerning a private individual if those records would not "shed[] light on [the] agency's performance of its statutory duties." Reporters Comm., 489 U.S. at 773. As noted above, the Supreme Court has held that such records are categorically exempt from disclosure under Exemption 7(C). See id. at 780; see also Nation Magazine v. United States Customs Serv., 71 F.3d 885, 893 (D.C. Cir. 1995) (concluding that "where it is clear that the request will not contribute significantly to public understanding of the operations or activities of the government and seeks law enforcement information on private individuals, the court need not undertake a balancing test . . . before it decides that the documents are exempt from disclosure"); Safecard, 926 F. 2d at 1205 ("Exemption 7(C) affords broad privacy rights to suspects, witnesses, and investigators.") (internal citations omitted). Cf. Senate of Puerto Rico v. United States Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987) (finding that "[t]here is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm" and that "[o]ther persons involved in the investigation–witnesses, informants, and the investigating agents–also have a substantial interest in seeing that their participation remains secret"); Hunt v. CIA, 981 F.2d 1116, 1118-21 (9th Cir. 1992) (approving CIA's refusal to confirm the existence or non-existence of documents pertaining to an individual and surveying cases); Fiduccia v. DOJ, 185 F.

42

3d 1035, 1047-48 (9th Cir. 1999) (categorically protecting records concerning FBI searches of house of two unnamed individuals).

Mr. Tiffany's argument, as set forth in his correspondence to the USMS, that his asserted status as Mr. Idema's attorney "obviates [him] of any obligation" to provide a written authorization from Mr. Idema "as a pre-requisite to [the USMS's] compliance with [his] FOIA request," simply ignores the express dictates of the Privacy Act, which authorizes disclosure of Privacy Act protected records, with exceptions not applicable here, only "with the prior written consent" of the person to whom the records relate. 5 U.S.C. § 552a(b).[28]  Were Mr. Tiffany's position adopted, any FOIA requester could falsely claim to be the attorney (or other representative) of a third party, and thus circumvent the very protections that the Privacy Act was intended to provide.

For all of these reasons, the Court should grant summary judgment in favor of the USMS insofar as Mr. Tiffany's request for records regarding Jack Idema is concerned.

### 2.    Records Regarding Viktoria Idema

As described above, the USMS conducted a search for regards regarding Viktoria Idema using the names and identifiers provided in Mr. Tiffany's request, in numerous USMS district offices as well as at headquarters. These searches located nine pages of responsive documents, all of which were produced to Mr. Tiffany with the names and identifying information of third-parties redacted. Because the USMS conducted an adequate search for records responsive to this

---

[28] The Privacy Act's provisions apply where the information at issue is subject to one of the FOIA's Exemptions. Dep't of Defense v. FLRA, 510 U.S. 487, 502 (1994) (home addresses of employees covered by FOIA Exemption 6 and thus protected by Privacy Act); U.S. Dep't of the Navy v. FLRA, 975 F.2d 348, 354-56 (7th Cir. 1992) (employee names and addresses not required to be disclosed under FOIA and, thus, protected by Privacy Act).

aspect of Mr. Tiffany's request, and because its redactions from the documents produced to Mr. Tiffany were appropriate, the USMS is entitled to summary judgment with respect to this aspect of Mr. Tiffany's request as well.

### a.     Adequacy of Search

An agency can show that it has discharged its obligations under the FOIA and is entitled to summary judgment by submitting declarations that "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents."  Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotations omitted); see also Oglesby v. U.S. Dep't. Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.").

To establish the sufficiency of its search, the agency's affidavits need only explain the "scope and method of the search" in "reasonable detail."  Kidd v. Dep't of Justice, 362 F. Supp. 2d 291, 295 (D.D.C. 2005) (quoting Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)). Declarations should be "sufficiently detailed," but "[t]he standard, however, is not 'meticulous documentation [of] the details of an epic search.'"  Texas Independent Producers Legal Action Ass'n v. IRS, 605 F. Supp. 538, 547 (D.D.C. 1984) (quoting Perry, 684 F.2d at 127).  Moreover, in evaluating the adequacy of a search, courts recognize that "[a]gency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence of other documents."  Grounds Saucer Watch v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981).  Failure to uncover a responsive document does not render the search inadequate: "[T]he issue to be resolved is not whether there might exist any . . . documents possibly responsive to the request,

but rather whether the search for those documents was adequate." Weisberg, 745 F.2d at 1485 (internal citations omitted).

As the Bordley Declaration demonstrates, the USMS conducted searches reasonably calculated to uncover documents responsive to Mr. Tiffany's request insofar as it sought records regarding Viktoria Idema. See generally, Bordley Decl., ¶¶ 13-17. Thus, USMS searched all USMS district offices in the states of North Carolina and Texas, as well as USMS headquarters, for responsive records. Id., ¶ 13. In conducting this search, USMS identified those systems of records in which any responsive records were likely to be located, and searched those systems of records using Viktoria Idema's name, all the variants of her name provided by Mr. Tiffany, and all of the personal identifiers provided by Mr. Tiffany. Id. In sum, the USMS "made a good faith effort to search for the records requested," and "its methods were reasonably expected to produce the information requested.'" Kidd, 362 F. Supp. 2d at 294 (citation omitted). Accordingly, the Court should enter summary judgment on this issue in favor of the USMS.

> b.     Redactions

As described in the Bordley Declaration, the USMS redacted the names and personal information identifiable to third parties from the records produced to Mr. Tiffany. See Bordley Declaration, ¶¶ 20-24. The information so redacted consisted of the name of the law enforcement officer who prepared a one-page Status Report; and the name of the law enforcement officer who prepared a two page Report of Investigation, his signature, and the name of the criminal investigator who approved the report; the North Carolina registration numbers of two vehicles referenced in the report of investigation, and one of the vehicle owners' names; the names of three third-party individuals referenced in the report of investigation; and

45

the name of a Fayetteville, N.C. police officer referenced in the report of investigation.  Id.

This information was redacted pursuant to Exemption 7(C) of the FOIA, which, as discussed above, exempts from disclosure "records or information compiled for law enforcement purposes," to the extent that the production of such records or information "(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552a(b)(7)(C).  In deciding to withhold the redacted information, the USMS considered whether or not there was a legitimate public interest in disclosure of such information that would outweigh the referenced individuals' privacy interest in non-disclosure.  Id., ¶ 24.  The USMS could discern no legitimate public interest in disclosure of this information, as it is not readily apparent that such disclosure would shed any light on the working of the criminal justice system or the USMS, and Mr. Tiffany provided no indication as to how disclosure of such information would meet the basic purpose of the FOIA, i.e., to shed light on an agency's performance of its statutory duties.  Id.  Release of this identifying information could, on the other hand, expose the referenced individuals to unwarranted public attention, embarrassment, harassment or annoyance for being associated with an official criminal law enforcement matter, and to possible danger to their life or physical safety for cooperating in a law enforcement investigation.  Id.  The USMS correctly reasoned that disclosure to Mr. Tiffany would be equivalent to disclosure to the public and, as such, could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Id.

Courts have regularly recognized the propriety of withholding such information pursuant to Exemption 7(C).  See, e.g., Safecard, 926 F.2d at 1206 ("We now hold categorically that, unless access to the names and addresses of private individuals appearing in the ambit of

Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."); Rugiero v. U.S. Dep't of Justice, 257 F.3d 534, 552 (6th Cir. 2001) (protecting third-party information as well as identifying information regarding DEA agents); Halpern v. FBI, 181 F.3d 279, 296 (2d Cir. 1999) (identities of non-federal law enforcement officers); Gabel v. IRS, 134 F.3d 377, 377 (9th Cir. 1998); NARA v. Favish, 541 U.S. 157, 166 (2004); Nix v. United States, 572 F.2d 998, 1005-06 (4th Cir. 1978) (affirming withholding of identities of FBI agents and assistant U.S. attorney); Hunt, 972 F.2d at 288 (government employees have a "legitimate interest in keeping private matters that could conceivably subject them to annoyance or harassment").

The USMS is thus entitled to summary judgment with respect to the redactions made to the documents produced to Mr. Tiffany.

### 3.    Records that Do Not Exist

Item 5 of Mr. Tiffany's request sought vehicle logs for vehicles assigned to any USMS personnel in the vicinity of Fayetteville, N.C. on January 7, 2005.  See Bordley Decl, Exh. 1. The USMS office for the Eastern District of North Carolina, however, does not maintain vehicle logs.  Bordley Decl., ¶ 19.  Accordingly, Mr. Tiffany was informed that no records responsive to his request exist, and the USMS is entitled to summary judgment with respect to this aspect of Mr. Tiffany's request.

Item 7 of Mr. Tiffany's request sought – in addition to "after-action reports" regarding Ms. Idema's arrest, which was provided to Mr. Tiffany – records regarding "evaluations, awards, reprimands, related to the arrest or to the Marshals who conducted the arrest."  Bordley Decl, Exh. 1.  As explained in the Bordley Declaration, however, none of the individuals who

conducted the arrest were USMS employees. Id., ¶ 18. Accordingly, to the extent that the request

seeks records regarding "evaluations, awards, reprimands" related to USMS employees who

conducted the arrest, no such records exist; to the extent that the request seeks such records

regarding the non-USMS employees who conducted the arrest, any such records, if they exist,

would not be in the control of the USMS. Cf. Steinberg v. U.S. Dep't of Justice, 801 F. Supp.

800, 802 (D.D.C. 1992) (agency not obligated to retrieve even its own records from other law

enforcement agency in response to FOIA request); Spannaus v. U.S. Dep't of Justice, 942 F.

Supp. 656, 658 (D.D.C. 1996) (files no longer in agency's possession not subject to FOIA).

The USMS is therefore entitled to summary judgment with respect to these aspects of Mr.

Tiffany's request.

### 4.    Documents Withheld in their Entirety

As noted above, the USMS withheld from disclosure the USMS employment roster for

the State of North Carolina, as well as the employment information of those Marshals and/or

other federal government employees who participated in the arrest of Viktoria Idema on January

7, 2005, pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C). Bordley

Decl., ¶ 25. The USMS withheld this information because the public disclosure of the names of

USMS employees, as well as the names and other employment information pertaining to USMS

and other government employees who may have participated in the arrest of Viktoria Idema,

reasonably could be expected to subject such individuals to unnecessary public attention,

scrutiny, harassment, and annoyance, both in the course of performing their official duties and in

their private lives, and could possibly pose a danger to their life or physical security. Id., ¶ 27.

Nor would any apparent public interest be served by the disclosure of such information, as it is

unlikely to shed light on the operations of government.  Id.  Indeed, the public interest weighs in

favor of non-disclosure to foster the efficient performance of official duties regarding the receipt,

processing, transportation and custody of prisoners, the execution of Federal arrest warrants, and

the investigation of fugitive matters.  Id.  The USMS correctly concluded that absent a legitimate

public interest, disclosure could reasonably be expected to constitute a clearly unwarranted

invasion of personal privacy.  Id.

The USMS's decision to withhold such records is supported by the Supreme Court's

decision in Reporters Committee, and the host of cases affirming the applicability of Exemptions

6 and/or 7(C) to the identity and other personal information regarding law enforcement

personnel.  As discussed above, Reporters Committee recognized the appropriateness of

categorical application of Exemption 7(C) to categories of information – such as that at issue

here – where the privacy harm likely to be caused by disclosure of the information outweighs the

(nonexistent) public interest in that information.  Reporters Comm., 489 U.S. at 779.  And, as the

Fourth Circuit has noted:

> One who serves his state or nation as a career public servant is not thereby
> stripped of every vestige of personal privacy, even with respect to the discharge of
> his official duties.  Public identification of any of these individuals could
> conceivably subject them to harassment and annoyance in the conduct of their
> official duties and in their private lives.

Nix v. United States, 572 F.2d at 1006.  See also Favish, 541 U.S. at 171 (finding privacy

interests to be undiminished by deceased's status as high-level public official); Rugiero, 257 F.3d

at 552 (upholding nondisclosure of identifying information about DEA agents and personnel);

Robert v. Nat'l Archives, 1 Fed. Appx. 85, 86 (2d Cir. 2001) (protecting government employee's

name); Neely, 208 F.3d 461, 464 (4th Cir. 2000) (withholding FBI Special Agents' names);

49

<u>Fiduccia</u>, 185 F.3d at 1043-45 (withholding DEA and INS agents' names); <u>Halpern</u>, 181 F.3d at 296 (protecting identities of nonfederal law enforcement officers); <u>Manna v. United States Dep't of Justice</u>, 51 F.3d 1158, 1166 (3d Cir. 1995) (finding law enforcement officers have substantial privacy interest in nondisclosure of names, particularly when requester held high position in La Cosa Nostra); <u>Jones v. FBI</u>, 41 F.3d 238, 246 (6th Cir. 1994) (protecting names of FBI Special Agents and federal, state, and local law enforcement personnel); <u>Becker v. IRS</u>, 34 F.3d 398, 405 n.23 (7th Cir. 1994) (protecting initials, names, and phone numbers of IRS employees); <u>Church of Scientology Int'l v. IRS</u>, 995 F.2d 916, 920-21 (9th Cir. 1993) (deciding privacy interest exists in handwriting of IRS agents in official documents); <u>Maynard v. CIA</u>, 986 F.2d 547, 566 (1st Cir. 1993) (protecting names and initials of low-level FBI Special Agents and support personnel); <u>New England Apple Council v. Donovan</u>, 725 F.2d 139, 142-44 (1st Cir. 1984) (inspector general investigator has "interest in retaining the capability to perform his tasks effectively by avoiding untoward annoyance or harassment").

Accordingly, the Court should enter summary judgment in favor of the USMS with respect to the records withheld in their entirety in response to items 4 and 6 of Mr. Tiffany's request.

## V.    The Department of Defense

### A.    Allegations in the Complaint

Eleven of the entries on Exhibit 1 to the Complaint relate to FOIA requests or other correspondence allegedly sent to the Department of Defense ("DoD"), including requests nominally directed to the Department of the Army ("DA"), U.S. Central Command ("CENTCOM"), and the Defense Intelligence Agency ("DIA").  <u>See</u> Compl., Exh. 1, entries F10,

50

F11, F18, F21, F23, F24, F25, F26, F28, F29, F31. Three of these entries were allegedly provided to the U.S. Embassy in Afghanistan and, as discussed below, are not located in DoD files (entries F10, F11, F18). The other eight entries relate to three separate FOIA requests made by Mr. Tiffany or Mr. Idema: a request from Mr. Idema seeking records regarding "awards to Linda Vester" (entries F25, F28), a request from Mr. Idema seeking "documents between Fox News . . . and CENTCOM." (entries F26, F29), and a request by Mr. Tiffany seeking records regarding a Captain Brendan Donnelly (entries F21, F23, F24, F31).

With the exception of the three entries identified above that were allegedly sent to the U.S. Embassy in Afghanistan, and with one additional exception addressed directly to DIA (F31), all of the other entries on Exhibit 1 that were directed to components of DoD were addressed to the Pentagon (as opposed to the FOIA offices of the various DoD components involved), and all of the correspondence attached as Exhibit 6 to the Complaint (captioned "FOIA requests to the Department of Defense") was similarly addressed to the Pentagon. Only those requests, therefore, are properly at issue in this lawsuit. Nevertheless, defendants address below additional similar FOIA requests sent by Mr. Tiffany to the various DoD components, and the processing of those requests. That information is provided solely for the Court's background, as those additional requests are not identified in or appended to the Complaint, and are therefore not part of the instant lawsuit.

### B. Requests Received by DoD and DoD Components.

#### 1. Office of the Secretary of Defense and Joint Staff

As just discussed, with the exception of the three entries identified above that were allegedly sent to the U.S. Embassy in Afghanistan, and with one additional exception addressed

directly to DIA (F31) (all of which are addressed below), all of the other entries on Exhibit 1 that were directed to components of DoD were allegedly addressed to the Directorate of Freedom of Information, 1155 Defense Pentagon, Washington, DC 20301-1155.  See entries F21, F23, F24, F25, F26, F28, F29.  That is the address for FOIA requests directed to the Office of the Secretary of Defense and the Chairman of the Joint Chiefs of Staff.  See 32 C.F.R. Part 286, App. B, App. 2.2.1.

As explained in the declaration of William T. Kammer, attached as Exhibit D, due to the size and complexity of the DoD, there is no central repository for all DoD records.  Kammer Decl., ¶ 2.  The several components of the DoD, including the military departments, separate defense agencies and Combatant Commands (e.g., Department of the Army, Defense Intelligence Agency, and United States Central Command) operate their own FOIA offices to respond to requests for records for which they are responsible.  Id.  See also 32 C.F.R. Part 286, App. B, App. 2.1.2 (describing decentralized DoD FOIA program and providing addresses for FOIA requests).

The Office of Freedom of Information ("OFOI") at the Pentagon is responsible for processing FOIA requests for documents within the possession and control of the Office of the Secretary of Defense (OSD) and the Joint Staff.  Kammer Decl., ¶ 1.  OFOI received several FOIA requests from Jack Idema and John Tiffany that correspond to requests identified in Exhibit 1 to the Complaint.  Specifically, OFOI received two FOIA requests, dated March 31, 2005, and April 4, 2005, respectively, from Mr. Idema, as well as a request dated March 15, 2005, from Mr. Tiffany.  These requests encompass entries F21, F23, F24, F25, F26, F28 and F29 on Exhibit 1 to the Complaint.

a.    *The Requests from Mr. Idema*

On May 6, 2005, OFOI received two FOIA requests, dated March 31, 2005, and April 4, 2005, respectively, from Mr. Jack Idema.  Kammer Decl., ¶ 10 & Exhs. 6-7.  The request from Mr. Idema dated March 31, 2005 sought records regarding certain correspondence and other communications between Fox News and "CENTCOM, DIA, DOD, or any branch of the Department of the Army," and was assigned case number 05-F-1499.  Kammer Decl., ¶ 10 & Exh. 6.  OFOI subsequently received a duplicate of this request from Mr. Idema.  Id.  These two requests correspond to entries F26 and F29 on plaintiffs' Exhibit 1, as well as the second document attached as part of Exhibit 6 to the Complaint.

The request from Mr. Idema dated April 4, 2005 sought records regarding any Department of Defense or Department of Army awards to Linda Vester of Fox News, any Fox News employee, or Fox News itself, and was assigned case number 05-F-1501.  Kammer Decl., ¶ 10 & Exh. 7.  OFOI subsequently received a duplicate of this request as well.  Id.  These two requests correspond to entry F28 on plaintiffs' Exhibit 1 (which is alleged to be the same as entry F25, which was never received by OFOI), as well as to the last document attached as part of Exhibit 6 to the Complaint.

Both requests from Mr. Idema also included a version of the following statement:  "Any attempt to redirect or delay this request (such as telling me to send this request to CENTCOM or Bagram, etc, etc) will be considered a denial under the FOIA laws and will be immediately followed with an appeal, and if denied, a lawsuit."  Kammer Decl., ¶ 10 & Exhs. 6-7.  OFOI interpreted this statement as an indication that Mr. Idema did not want his requests referred to other offices or components that might have records responsive to the requests.  Id., ¶ 10.

The receipt of Mr. Idema's requests was acknowledged by an interim response letter to Mr. Idema dated June 6, 2005.  Id., ¶ 12 & Exh. 8.  In that letter, Mr. Idema was advised that DoD operates a decentralized FOIA program; that OFOI is responsible for responding to FOIA requests for records of the components of the OSD and the Joint Staff; that the other components of DoD operate their own FOIA offices; and that in light of Mr. Idema's request that his requests not be redirected to any other entity, the processing of his request would be confined to OSD and the Joint Staff.  Id.

Given the subject matter of these requests, OFOI determined that, to the extent responsive records exist within OSD or the Joint Staff, the Office of the Assistant Secretary of Defense for Public Affairs (PA) would be the only office likely to have responsive documents.  Id., ¶ 11. Within PA, the searches for both requests were conducted by the Press Operations Office, which handles responses pertaining to media requests.  Id., ¶ 13.  The files maintained by the Press Desk Officers responsible for the type of information requested by plaintiff were searched.  Id. These Officers' files are the only ones within PA reasonably expected to contain documents responsive to plaintiff's requests, if such documents exist.  Id.  Both electronic and hard copy searches were conducted of the Press Desk Officers' files, using the search terms Afghanistan, Jack Idema, JK Idema and J. Keith Idema for request 05-F-1499 and the search terms DoD awards, Linda Vester, and Fox News for request 05-F-1501.  Id.  PA did not locate any records responsive to either of Mr. Idema's requests.  Id.

By letter dated January 18, 2006, OFOI responded to Mr. Idema and informed him that no records responsive to his request were located within OSD and the Joint Staff.  Id. & Exh. 9.

b.     *The Requests from Mr. Tiffany*

On March 24, 2005, OFOI received a FOIA request letter dated March 15, 2005, from Mr. Tiffany.  Kammer Decl., ¶ 24 & Exh. 1.  The request, which noted that Mr. Tiffany was "attorney-of-record" for Jack Idema and sought certain records regarding a Captain Brendan J. Donnelly, was assigned case number 05-F-1238.  Id.  The request corresponds in substance, but not in date, to entry F21 on Exhibit 1 to the Complaint.  See Comp., Exh. 1, entry F21.  OFOI also came into possession of an identical request from Mr. Tiffany dated March 7, 2005, which corresponds to entry F21 on Exhibit 1 in both substance and date, and to the first document attached as part of Exhibit 6 to the Complaint.  Kammer Decl, ¶ 9 n.1.  As the two requests are identical, the March 7 request was considered to be part of case number 05-F-1238.  Id.

Mr. Tiffany's request sought records likely maintained by the Department of the Army, the Defense Intelligence Agency, and/or United States Central Command.  Id., ¶ 4.  Given the nature of documents sought, it was determined that no component of OSD or the Joint Staff would maintain the types of records sought in the request.  Id.

Accordingly, Mr. Tiffany was advised by e-mail dated March 29, 2005, that his request was misdirected, that the Department of the Army, Defense Intelligence Agency and U.S. Central Command would likely have cognizance over the records he requested, and that each of these entities operates its own FOIA offices.  Id., ¶ 5 & Exh. 2.  The e-mail provided Mr. Tiffany with both e-mail and U.S. mail addresses at which he could seek such records from these components.  Id.  The e-mail also informed Mr. Tiffany that his request was being closed.  Id.

By two separate letters dated April 4, 2005, Mr. Tiffany (a) sent a second FOIA request

55

seeking substantially the same records as those sought in case number 05-F-1238,[29] and

(b) appealed the response set forth in the e-mail dated March 29, 2005.  Kammer Decl., ¶ 6 &

Exh. 3.  The second request relating to Captain Donnelly was considered part of case number 05-

F-1238, and Mr. Tiffany's appeal was assigned case number 05-F-1011(A).  Id., ¶ 6.

On April 4, 2005, a member of OFOI's staff spoke with Mr. Tiffany by telephone and

explained to him the decentralized nature of the DoD FOIA program.  Id., ¶ 7.  Mr. Tiffany

indicated that he sent his request to the other DoD agencies identified by OFOI.  Id.

By letter dated April 22, 2005, the OFOI acknowledged receipt of Mr. Tiffany's April 4,

2005 request and appeal.  Id., ¶ 8 & Exh. 4.  By letter dated January 18, 2006, OFOI responded to

Mr. Tiffany regarding both his appeal (05-F-1011(A)) and his second request pertaining to case

number 05-F-1238.  Id., ¶ 9 & Exh. 5.  The response again informed Mr. Tiffany that the

"documents [he] seek[s] would not be maintained by the Office of the Secretary of Defense or

Joint Staff, and, therefore, would not be under the purview of [OFOI]."  Id.  The response also

again informed Mr. Tiffany that DoD operates a decentralized FOIA program, suggested he

submit his request to the previously-identified components likely to have cognizance of the

records he seeks, and enclosed the March 29, 2005 e-mail providing addresses for those

components' FOIA offices.  Id.

Other than the requests described above, OFOI has not received any other FOIA requests

from Mr. Tiffany or any of the plaintiffs in this case.  Id., ¶ 14.

---

[29] This second request was slightly different from the March 15 request in the details of the records sought, but still sought records regarding Captain Brendan Donnelly.  Compare Kammer Decl., Exh. 1 with Kammer Decl., Exh. 3.  The April 4 request corresponds in substance, but not date, to entries F23 and F24 on Exhibit 1 to the Complaint.

### 2.     Other DoD Components

Mr. Tiffany also forwarded copies of his March 15, 2005 request, and requests substantively identical to his April 4, 2005 request – both seeking records regarding Brendan Donnelly – to various other DoD components.  As those forwarded requests are not set forth in Exhibit 1 to the Complaint, or otherwise referenced in the Complaint, these requests to other DoD components are not properly at issue in this lawsuit.  Nevertheless, in the interest of providing the Court with complete background information regarding the processing of plaintiffs' and Mr. Tiffany's related FOIA requests to the defendant agencies, we set forth below information regarding the processing of these requests by these DoD components.

#### a.     *Defense Intelligence Agency*

As explained in the Declaration of Margaret A. Bestrain, attached hereto as Exhibit E, the only FOIA request that DIA received from any of the plaintiffs or from Mr. Tiffany consisted of an April 4, 2005 letter from Mr. John Tiffany forwarding two FOIA requests to the DIA, both seeking records regarding Captain Donnelly.  Bestrain Decl., ¶ 5 & Exh. 1.  The first of these requests was dated March 15, 2005 and addressed to the FOIA Offices of the Department of the Army and the Department of Defense at the Pentagon.  Id.  The second request was dated April 4, 2005 and was addressed to the DIA.  Id.  The March 15 request, but neither the April 4 request nor the April 4 cover letter, indicates that Mr. Tiffany is "attorney-of-record for Jack Idema."  Id.  Neither the April 4 cover letter to DIA, nor the attached April 4 request to the DIA is listed on Exhibit 1 to the Complaint or otherwise referenced in the Complaint.  The March 15 request forwarded to DIA was a photocopy of the request Mr. Tiffany had sent to OFOI at the Pentagon, and which that office processed as discussed above.  The April 4 request to DIA was identical in

substance to the April 4 request sent to OFOI and discussed above, although it was a separate request in that it was addressed directly to DIA (i.e., it was not simply a copy of the OFOI request).  Compare Bestrain Decl., Exh. 1 with Kammer Decl., Exhs. 1, 3.

By letter dated April 21, 2005, the DIA responded to Mr. Tiffany's request and asked that he submit "in writing a notarized or sworn authorization from Brendan J. Donnelly to release records" to Mr. Tiffany.  Bestrain Decl., ¶ 6 & Exh. 2.  The DIA also asked Mr. Tiffany to provide additional identifying information with respect to Captain Donnelly for use in conducting a search for responsive records.  Id.

By letter dated May 6, 2005, Mr. Tiffany responded to the DIA.  His response stated, inter alia, that "we are not requesting the disclosures of personal information and advise you again that personal information such as SSNs, DOBs etc may be redacted."  Bestrain Decl., ¶ 7 & Exh. 3.  Mr. Tiffany further asserted that "[t]his clearly resolves your concerns and issues relating to privileged personal information not obtainable through  FOIA without a release from Captain Donnelly."  Id.  Mr. Tiffany also asserted that he had provided sufficient identifying information on Captain Donnelly.  Id.  Mr. Tiffany did not provide an authorization from Captain Donnelly to release records to Mr. Tiffany.  Id.  Mr. Tiffany's May 6 response to the DIA corresponds to entry F31 on Exhibit 1 to the Complaint, as well as to the second document attached as Exhibit 7 to the Complaint.

Based on the substance of Mr. Tiffany's request, the DIA determined that five DIA components had potential cognizance over documents that would, if discovered, be responsive to Mr. Tiffany's request.  Id., ¶ 8.  Those components, discussed in greater detail in Ms. Bestrain's Declaration, are: the Directorate for Administration, the Directorate for Information

Management, the Directorate for Human Intelligence, the Joint Military Intelligence College, and the Office of the Inspector General.  Id.  Each of these five Directorates was tasked with conducting a comprehensive search of their files for potentially responsive documents, based on their respective roles in the intelligence collection, analysis and dissemination mission of DIA. Id.  As described in greater detail in the Bestrain Declaration, each of these Directorates searched those databases likely to contain responsive records for all records concerning Captain Donnelly. Id., ¶¶ 9-13.  No responsive documents were discovered.  Id.

The DIA also conducted a separate search of the same component files described above for call records matching the telephone number 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-2641, as specified in the March 15 request attached to Mr. Tiffany's request.  Id., ¶ 14.  The search revealed that the neither the phone number 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-2641 nor any terminal to which it was assigned is under the ownership or control of DIA.  Id.  No responsive records concerning the phone number have been found.  Id.

By letters dated December 7, 2005, and February 9, 2006, Mr. Tiffany was informed that no records responsive to his request were found.  Id., ¶ 15. Mr. Tiffany was also provided with information regarding how to appeal this determination, but he did not do so.  Id.

Other than the April 4 request from Mr. Tiffany just discussed, the DIA has not received any other FOIA requests from Mr. Tiffany or any of the plaintiffs in this action.  Id., ¶ 16.

> b.      *The Army*

The Department of the Army's receipt and handling of Mr. Tiffany's forwarded FOIA requests seeking documents regarding Captain Donnelly are explained in the Declaration of Barbara Garris, attached hereto as Exhibit F.  Like the DoD itself, the Army also operates a

decentralized FOIA program, wherein each office or military installation maintains its own records and operates its own FOIA office.  Garris Decl., ¶ 2.  The Army FOIA and Privacy Act Office ("FOIA/PA Office") – to which Mr. Tiffany forwarded his requests – is not a repository for Department of Army records.  Id.  Rather, its mission is to facilitate access to Army records.  Id.

On April 8, 2005, the Army FOIA/PA Office received a FOIA request dated April 4, 2005, from Mr. Tiffany.  Id., ¶ 3 & Exh.  1.  As with Mr. Tiffany's forwarded request to the DIA, the request he sent to the Army consisted of a cover letter and two attached FOIA requests.  Id.  The first attached request was a copy of the March 15, 2005 request he had sent to the Pentagon, and the second attached request was an April 4, 2005 request addressed to the Army's FOIA and Privacy Act office, identical to the April 4 requests Mr. Tiffany had sent to the Pentagon and the DIA.  Id.

The Army FOIA/PA Office determined that the National Personnel Records Center (NPRC) in St. Louis, Missouri, would be the agency likely to have records responsive to Mr. Tiffany's request.  Id., ¶ 4.  Because Mr. Tiffany's request neglected to provide personal identifiers (such as Social Security number and date of birth) regarding Captain Donnelly (which would assist the NPRC in locating relevant records), rather than refer Mr. Tiffany's request to the NPRC for processing, the FOIA/PA office responded to Mr. Tiffany's request by letter dated April 27, 2005.  Id., ¶ 4 & Exh. 2.  That response advised Mr. Tiffany that the FOIA/PA Office is not a repository for Department of Army documents and therefore does not have records responsive to his request; that such records are likely to be maintained by the NPRC; provided him with NPRC's mailing address and Website address; and advised him that he should write to

60

NPRC and provide the full name, Social Security number and/or date of birth of the subject of his request.  Id.  The response also advised Mr. Tiffany that the release of certain information to a third-party requires a release authorization from the subject of the file.  Id.  Mr. Tiffany did not respond to this letter or otherwise pursue his FOIA request further with this the Army's FOIA/PA Office.  Id., ¶ 4.  The Army FOIA/PA Office has not received any other FOIA requests from Mr. Tiffany or any of the plaintiffs in this action.  Id., ¶¶ 5-7.

c.     U.S. Central Command

As detailed in the attached Declaration of Lieutenant Colonel Patrick N. Joyner, attached hereto as Exhibit G, Mr. Tiffany also forwarded his March 15 and April 4 requests seeking records regarding Captain Donnelly to U.S. Central Command ("CENTCOM").  As with the other DoD components to which Mr. Tiffany sent these requests, he forwarded the requests to CENTCOM by cover letter dated April 4, 2005, attaching (i) a photocopy of the March 15 request as originally sent to the Pentagon and (ii) a separate request addressed to CENTCOM setting forth the substance of the April 4 request sent to the Pentagon.  Joyner Decl., ¶ 3 & Exh. 1.

On or about May 4, 2006, CENTCOM forwarded that portion of Mr. Tiffany's request seeking copies of awards and other military records to the Army's Human Resources Command in St. Louis, Mo. for further processing.  Joyner Decl., ¶ 4.  By letter dated May 5, 2006, CENTCOM informed Mr. Tiffany of this referral, and indicated that the remaining portions of his request were being processed by CENTCOM.  Id., ¶ 4 & Exh. 2.

CENTCOM itself undertook a multi-pronged search for responsive records.  First, it identified those areas within CENTCOM headquarters where responsive records might exist –

61

the headquarters' Intelligence Directorate as well as its Special Operations Command, Central

Command – and searched for any responsive records in electronic files, filing cabinets and safes.

Id., ¶¶ 5, 7.  No responsive records were found.  Id., ¶¶ 5, 9.  Next, Mr. Tiffany's request was

sent to the FOIA office of the Combined Forces Coalition – Afghanistan (CFC-A).  Id., ¶ 7.  On

March 24, 2006, CFC-A reported that it had not located any records responsive to the request

(although it did identify a soldier with a similar name who had received a bronze star).  Id., ¶ 10

& Exh. 4.  After receiving this response, CENTCOM renewed communication with Human

Resources Command concerning that portion of Mr. Tiffany's request relating to a Bronze Star,

and was informed that Human Resources Command would respond to that portion of the request.

Id., ¶ 11.

Mr. Tiffany was informed that no responsive records were located at CENTCOM by

letter dated August 25, 2006.  Id., ¶ 12 & Exh. 5.  The letter also informed Mr. Tiffany of his

right to appeal the determination that no responsive records were located.  Id.  CENTCOM has

not received any other FOIA requests from Mr. Tiffany or any of the plaintiffs to this case.  Id.,

¶ 13.

d.    *Army Human Resources Command*

As noted above, CENTCOM referred that portion of Mr. Tiffany's request seeking copies

of awards and other military records to the Army's Human Resources Command, St. Louis, Mo.

("HRC-S") for further processing.  A-HRC's handling of that referral is described in the

Declaration of Karen Flinkstrom, attached hereto as Exhibit H.  As noted in Ms. Flinkstrom's

Declaration, CENTCOM forwarded Mr. Tiffany's request to HRC-S on or about May 4, 2006.

Flinkstrom Decl., ¶¶ 4-6 & Exhs. 1-2.  By letter dated June 1, 2006, HRC-S issued an interim

response to Mr. Tiffany acknowledging receipt of the requests.  Id., ¶ 8 & Exh. 3.

Based on Mr. Tiffany's requests, HRC-S conducted a search of the Personnel Electronic

Records Management System (PERMS) and the Soldier Management System (SMS) for

responsive documents, as those systems (which are described in greater detail in the Flinkstrom

Declaration) would be the likely repositories of any responsive documents in HRC-S custody.

Id., ¶ 9.  HRC-S staff searched both systems for any documents related to CPT Brendan

Donnelly.  Id.

The HRC-S search identified five pages of records responsive to Mr. Tiffany's request,

and by letter dated June 6, 2006, HRC-S provided Mr. Tiffany with those five pages of

responsive records.  Id., ¶ 10 & Exh. 4.  As described in greater detail in the Flinkstrom

Declaration, personal information was redacted from these documents pursuant to FOIA

Exemption 6, 5 U.S.C. § 552(b)(6), as release of that information would result in a clearly

unwarranted invasion of Captain Donnelly's personal privacy.  Id., ¶ 10.  Specifically, Captain

Donnelly's Social Security number, date of birth, home and other address information, family

information, service-related information, and other personal information were all redacted from

the documents provided to Mr. Tiffany.  Id., ¶ 11 (describing in detail information redacted).

The cover letter to Mr. Tiffany further advised him that no documents pertaining to a Rolex

watch or email messages were located.  Id., ¶ 10 & Exh. 4.  Mr. Tiffany was also advised that in

light of the redactions and the partial no records determination, the response to him constituted a

partial denial of his request, which could be appealed through HRC-S within 60 calendar days.

Id., ¶ 12.  Mr. Tiffany did not file such an appeal.  Id., ¶ 13.  With the exception of the April 4

request discussed above, HRC-S has not received any other FOIA requests from Mr. Tiffany or

any of the plaintiffs in this action.  Id., ¶ 14.

### 3.    Summary

As described above, DoD essentially received three separate requests from Mr. Tiffany

and Mr. Idema: (a) two requests from Mr. Idema seeking records regarding Fox News and Linda

Vester, which were sent to the Pentagon; and (b) a request from Mr. Tiffany – composed of a

March 15 letter and a follow-up April 4 letter – seeking records regarding Captain Donnelly,

which was sent to the Pentagon as well as other DoD components.  As noted above, the requests

forwarded by Mr. Tiffany to the other DoD components are not listed on Exhibit 1 to the

Complaint or otherwise referenced in the Complaint; information regarding those requests is

provided as background information for the Court.

For the Court's convenience, the table below lists each of the requests set forth on Exhibit

1 to the Complaint that are alleged to have been made to the Department of Defense or a

component thereof.  With respect to each such request, the chart notes whether the Department

received such a request or a substantially similar request and, if so, how the request was handled,

with reference to the relevant portions of the Kammer or Bestrain Declarations.

| Request No. from Exhibit 1 | Received by Dep't of Defense? | Description/Notes | Declaration |
|---|---|---|---|
| F10 | N | Not addressed to DoD FOIA office. | Kammer Decl., ¶ 14 |
| F11 | N | Not addressed to DoD FOIA office. | Kammer Decl., ¶ 14 |
| F18 | N | Not addressed to DoD FOIA office. | Kammer Decl., ¶ 14 |

64

| Request No. from Exhibit 1 | Received by Dep't of Defense? | Description/Notes | Declaration |
|---|---|---|---|
| F21* | Y | Identical to March 15 request from Tiffany to Pentagon assigned case no. 05-F-1238. No responsive records located at OSD or Joint Staff. | Kammer Decl., ¶ 9 n.1 |
| F23* | N | Substantively identical to April 4 request from Tiffany to Pentagon included as part of case no. 05-F-1238. No responsive records located at OSD or Joint Staff. | Kammer Decl., ¶ 14 |
| F24* | N | Substantively identical to April 4 request from Tiffany to Pentagon included as part of case no. 05-F-1238. No responsive records located at OSD or Joint Staff. | Kammer Decl., ¶ 14 |
| F25 | N | Substantively identical to F28. | Kammer Decl., ¶ 14 |
| F26 | Y | Case no. 05-F-1499. No responsive records located at OSD or Joint Staff. | Kammer Decl., ¶¶ 10-13 |
| F28 | Y | Case no. 05-F-1501. No responsive records located at OSD or Joint Staff. | Kammer Decl., ¶¶ 10-13 |
| F29 | Y | Substantively identical to F26. Part of case no. 05-F-1499. No responsive records located at OSD or Joint Staff. | Kammer Decl., ¶¶ 10-13 |
| F31* | Y | Not a FOIA request. | Bestrain Decl., ¶ 7 |

* The March 15 and April 4 request were also forwarded by Mr. Tiffany to the DIA, Army and CENTCOM, and were referred by CENTCOM to HRC-S. Each of these components processed the requests, and HRC-S located and released responsive records. The request to which F31 relates – which is not separately listed on Exhibit 1 – was received and processed by DIA, and no responsive records were located.

## C.    The Department of Defense is Entitled to Summary Judgment

### 1.    Requests F10, F11, and F18

As discussed above, the Department of Defense is not in possession of alleged FOIA

requests F10, F11 and F18 or any similar request.  Kammer Decl., ¶ 14.  As further discussed above with respect to the requests allegedly made to the FBI, under the plain language of the FOIA, an agency's obligation to respond to a request for records does not begin unless and until the agency actually receives a valid FOIA request.  5 U.S.C. § 552(a)(6)(A)(I).  Unless a FOIA requester can prove that a FOIA request was actually mailed and received, and where the agency provides evidence that it never received the request at issue, the case must be dismissed.  See, e.g., Schoenman v. FBI, No. 04-2202 (CKK), 2006 WL 1126813 (D.D.C. March 31, 2006) at *11-13 (citing cases); Antonelli v. BATFE, No. 04-1180 (CKK), 2005 WL 3276222, *5 (D.D.C. Aug. 16, 2005);  Carbe v. BATF, No. 03-1658 (RMC), 2004 WL 2051359, *8 (D.D.C. Aug. 12, 2004); Hutchins v. Dep't of Justice, No. 00-2349 (HHK), 2005 WL 1334941, at *2 (D.D.C. June 6, 2005).  Accordingly, any claims based on these alleged FOIA requests must be dismissed.

In addition, neither of these requests was properly addressed to a DoD FOIA office, as required by DoD FOIA regulations.  See 32 C.F.R. § 286.22(a)(2) ("Individuals seeking DoD information should address their FOIA requests to one of the addresses listed in Appendix B of this part"); 32 C.F.R. Part 286, App. B (listing addresses for DoD FOIA offices).  Accordingly, the alleged requests were not made "in accordance with published rules stating the time, *place*, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A)(emphasis added).  As discussed above, this provides an independent basis for dismissal of any claims based on these alleged requests.  See Church of Scientology of California v. I.R.S., 792 F.2d 146, 150 (D.C. Cir. 1986) (applying Section 552(a)(3)(A)).

### 2.    Requests by Jack Idema

As discussed above, DoD received two requests from Jack Idema, corresponding to

66

entries F25, F26, F28 and F29 on Exhibit 1 to the Complaint.  Kammer Decl., ¶ 10.  The requests

sought various records concerning Fox News and Fox News employees.  Id.  OSD processed the

requests by referring them to the Office of the Assistant Secretary of Defense for Public Affairs

(PA), the only office within OSD likely to have any records responsive to the requests.  Id., ¶ 11.

Within that office, searches for both requests were conducted by the Press Operations Office,

which handles responses pertaining to media requests.  Id., 13.  The files maintained by the two

Press Desk Officers responsible for the type of information requested by Mr. Idema were

searched.  Id.  These Officers' files are the only files within PA reasonably expected to contain

documents responsive to Mr. Idema's requests, if any such documents exist.  Id.  Both electronic

and hard copy searches were conducted of the Press Desk Officers' files.  Id.  For case number

05-F-1499, the search terms used were Afghanistan, Jack Idema, JK Idema and J. Keith Idema,

precisely searching for documents originating between April and December 2004.  Id.  For case

number 05-F-1501, the search terms used were DoD awards, Linda Vester, and Fox News,

precisely searching for documents originating in the years 2002-2005.  Id.  The searches turned

up no responsive records, and Mr. Idema was so informed by letter dated January 18, 2006.  Id.,

¶ 13 & Exh. 9.

        These searches readily meet the applicable legal requirements discussed above, as they

were reasonably calculated to discover records responsive to Mr. Idema's requests.  See supra

Section IV.C.2.a (discussing adequacy of USMS search).  Accordingly, the Department of

Defense is entitled to summary judgment with respect to those claims based on Mr. Idema's

requests.

3.    **Requests by John Tiffany**

As described above, Mr. Tiffany made numerous requests to various DoD components

for records regarding Captain Brendan Donnelly.

a.    *Requests to OSD*

Only Mr. Tiffany's requests to OSD – which roughly correspond to entries F21, F23, and

F24 – are listed on Exhibit 1 to the Complaint, and only those requests are therefore properly

before the Court.  See Kammer Decl., ¶¶ 4-9, 14  (describing requests OSD received from Mr.

Tiffany).  None of the records sought by Mr. Tiffany would be maintained by any offices within

OSD.  Kammer Decl., ¶ 4.  Mr. Tiffany was so informed on several occasions, and provided the

names and addresses of those DoD components likely to have responsive records, if any.  Id.,

¶¶ 5, 9.  As discussed above, an agency is only required to conduct a  search for responsive

records that is "reasonably calculated to uncover all relevant documents."  Weisberg, 745 F.2d at

1485 (internal quotations omitted); see also Oglesby, 920 F.2d at 68 (D.C. Cir. 1990) ("In order

to obtain summary judgment the agency must show that it made a good faith effort to conduct a

search for the requested records, using methods which can be reasonably expected to produce the

information requested.").  Where, as here, none of the agency's files are likely to contain any

responsive records, the agency meets its search obligations by so informing the requester.  Any

contrary rule would impose fruitless search obligations upon agencies precisely in those requests

least likely to yield any responsive records.  Moreover, OSD did not simply inform Mr. Tiffany

that no OSD offices would maintain records responsive to his request; it also informed him

where he might ultimately locate such records.  Because OSD has searched those offices

reasonably likely to have records responsive to Mr. Tiffany's requests – which consist of no such

68

offices – OSD is entitled to summary judgment on Mr. Tiffany's requests.

> b.    *Requests to other DoD Components*

As noted above, Mr. Tiffany made identical requests for records regarding Captain Donnelly to several other DoD components – the Defense Intelligence Agency, Department of the Army, and CENTCOM.  None of these requests are listed on Exhibit 1 to the Complaint, and they are therefore not properly before the Court as plaintiffs have not identified them as being part of this lawsuit.  See Fed. R. Civ. P. 8(a) (Complaint shall set forth "a short and plain statement of the claim showing that the pleader is entitled to relief").  For this reason alone, any claims purportedly asserted based on the requests sent to these other DoD components should be dismissed for failure to state a claim.

In addition, each of these requests was properly processed by the component receiving it and summary judgment should be entered in favor of defendants with respect to any such claims that the Court nevertheless considers at issue in the lawsuit.

DIA.  As discussed above, upon receipt by DIA of Mr. Tiffany's request regarding Captain Donnelly, the DIA determined that five DIA components might have records responsive to Mr. Tiffany's request.  Bestrain Decl., ¶ 8.  Each of these five Directorates was tasked with conducting a comprehensive search of their files for potentially responsive documents, based on their respective roles in the intelligence collection, analysis and dissemination mission of DIA.  Id.  Each of these Directorates searched its databases and systems of information likely to contain any responsive records using Captain Donnelly's name.  Id., ¶¶ 8-13.  None of these searches turned up any records responsive to Mr. Tiffany's requests.  Id.  The DIA also conducted a separate search of the same component files described above for call records matching the

69

telephone number 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-2641, as specified in the March 15 request attached to Mr.

Tiffany's request.  Id., ¶ 14.  The search revealed that the neither the phone number 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-

2641 nor any terminal to which it was assigned is under the ownership or control of DIA.  Id.  No

responsive records concerning the phone number were found.  Id.  The DIA's searches were

"reasonably calculated" to discover all responsive records in its control.  Weisberg, 745 F.2d at

1485.  Accordingly, summary judgment should be granted to defendants with respect to any

claims based on Mr. Tiffany's request to the DIA.

Army.  As discussed above, Mr. Tiffany also forwarded his request for records regarding

Captain Donnelly to the Army FOIA/PA Office.  Garris Decl., ¶ 3.  That office is not a repository

for Department of Army records; rather, its mission is to facilitate access to Army records.  Id.,

¶ 2.  The Army FOIA/PA Office determined that the National Personnel Records Center in St.

Louis, Missouri, would be the agency likely to have records responsive to Mr. Tiffany's request.

Id., ¶ 4.  Because Mr. Tiffany's request neglected to provide personal identifiers (such as Social

Security number and date of birth) regarding Captain Donnelly (which would assist the NPRC in

locating relevant records), rather than refer Mr. Tiffany's request to the NPRC for processing, the

FOIA/PA office responded to Mr. Tiffany's request by advising him that the Army FOIA/PA

Office is not a repository for Department of Army documents and that any such records are likely

to be maintained by the NPRC, provided him with NPRC's mailing address and Website address,

and advised him that he should write to NPRC and provide additional identifying information

with respect to Captain Donnelly.  Id.  Because the Army FOIA/PA Office is not a repository of

records and does not actually control any records, any claims based on Mr. Tiffany's request to

that office should be dismissed.

CENTCOM and HRC-S.  As discussed above, Mr. Tiffany forwarded the same requests seeking records regarding Captain Donnelly to CENTCOM.  Joyner Decl., ¶ 3.  CENTCOM conducted searches of its headquarters components likely to have records responsive to the requests, and also forwarded the requests to CFC-A in Afghanistan, which similarly searched for responsive records.  Id., ¶¶ 5, 7, 9-10 (describing scope and nature of search in greater detail). No responsive records were located as a result of these searches.  Id.  In addition, CENTCOM forwarded that portion of Mr. Tiffany's request seeking copies of awards and other military records to the Army's Human Resources Command in St. Louis, Mo. ("HRC-S") for further processing.  Joyner Decl., ¶ 4; Flinkstrom Decl., ¶ 4.  HRC-S conducted a search of two systems of records likely to contain records responsive to Mr. Tiffany's request for any records regarding Captain Donnelly.  Flinkstrom Decl., ¶ 9.  That search identified five pages of responsive records, which were produced to Mr. Tiffany.  Id., ¶ 10 & Exh. 4.  As described above, Captain Donnelly's Social Security number, date of birth, home and other address information, family information, service-related information, and other personal information were all redacted from the documents provided to Mr. Tiffany pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6), on the ground that release of such information would constitute a clearly unwarranted invasion of Captain Donnelly's personal privacy.  Id., ¶¶ 10-11.

CENTCOM and HRC-S properly processed and responded to Mr. Tiffany's request, and are entitled to summary judgment with respect to any claims based on the request forwarded by Mr. Tiffany to CENTCOM.  Both components conducted a search for records "reasonably calculated" to locate all responsive records, Weisberg, 745 F.2d at 1485, as they searched for any records concerning Captain Donnelly in those files and systems of records reasonably likely to

contain responsive records.  Moreover, the redactions made to the records produced to Mr.

Tiffany by HRC-S were clearly appropriate under Exemption 6, as courts routinely recognize that

private information concerning third-parties – such as Social Security numbers, date of birth,

family information and the like – is precisely the type of information that Exemption 6 seeks to

protect.  See U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (all

information that "applies to a particular individual" meets threshold requirement of Exemption

6); Painting and Drywall Work Preservation Fund, Inc. v. HUD, 936 F.2d 1300, 1302 (D.C.

Cir.1991) ("That information includes the prosaic (e.g., place of birth and date of marriage) as

well as the intimate and potentially embarrassing."); Barvick v. Cisneros, 941 F. Supp. 1015,

1020-21 (D. Kan. 1996) (upholding withholding of "home addresses and telephone numbers;

social security numbers; dates of birth; maiden names; the names, addresses, and telephone

numbers for references; names and family relationships of relatives employed by the federal

government or armed services; life insurance; annuitant indicator; retirement plan; reasons for

leaving prior employment; and performance appraisals") (citing cases).  Nor is there any public

interest in the disclosure of the information redacted from these records, as such information

would shed no light on the operations of government.  Absent any discernible public interest in

the disclosure of such information, disclosure is inappropriate.  See Nat'l Ass'n of Retired Fed.

Emp. v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989) ("something, even a modest privacy interest,

outweighs nothing every time"); Int'l Bd. of Elec. Workers Local 5 v. HUD, 852 F.2d 87, 89 (3d

Cir. 1988) (no public interest in disclosure of Social Security numbers).  Accordingly, the

redactions are proper and defendants are entitled to summary judgment with respect to

CENTCOM and HRC-S's handling of Mr. Tiffany's request to CENTCOM, to the extent that the

Court deems that request part of this lawsuit.

**VI.    Other Requests and Correspondence**

In addition to the matters discussed above, Exhibit 1 to the Complaint also contains an entry (F16) regarding an alleged FOIA request allegedly sent to the U.S. Postmaster in Fayetteville, North Carolina.  See Compl., Exh 1, entry F16.  As the United States Postal Service is not a defendant in this action, any claims based on this alleged request must be dismissed.  Similarly, attached to the Complaint are several FOIA requests from a Francis Pizzulli.  See Compl., Exh. 6, third and fifth attachments.  As Mr. Pizzulli is not a plaintiff in this action, and neither of these requests indicate that they are made on behalf of any of the plaintiffs, any claims based on these requests must likewise be dismissed.  See Maxxam, Inc., v. FDIC, No. 98-0989 (EGS), 1999 WL 33912624, at *2 (D.D.C. Jan. 29, 1999).  Finally, the fourth attachment to Exhibit 6 to the Complaint consists of a letter from Mr. Tiffany to the Department of the Army in New York withdrawing an alleged FOIA request seeking a specific letter sent to the Indian Embassy.  Compl., Exh. 6, fourth attachment.  This document is not itself a FOIA request, the FOIA request it refers to is not referenced elsewhere in the Complaint or on Exhibit 1 to the Complaint, and, in any event, this letter purports to withdraw any such FOIA request.  Any claims being asserted based on this letter or the alleged FOIA request to which it refers should therefore be dismissed.

**CONCLUSION**

For the reasons discussed above, the Court should dismiss plaintiffs' claims and/or grant summary judgment to defendants.  Notwithstanding the allegations of the Complaint, defendants have properly responded to all valid FOIA requests properly made to them.

Dated: March 30, 2007.          Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director


/s/ Ori Lev
ORI LEV, DC # 452565
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC  20044
Tel: (202) 514-2395
Fax: (202) 318-7589

*Attorneys for Defendants*