# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

J.K. IDEMA, <u>et al.</u>,         )
                               )
        Plaintiffs,         )     No. 05 CV 01334 (EGS)
                               )
        v.                   )
                               )
UNITED STATES DEPARTMENT OF STATE, <u>et al.</u>,  )
                               )
        Defendants.        )

_____)

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7(h), defendants hereby submit this statement of material facts as to which there is no genuine issue in support of their motion for summary judgment.

<u>The FBI</u>

1.     The FBI has conducted a search of its FOIPA Document Processing System ("FDPS"), which houses the FBI's official records concerning receipt of all FOIA/Privacy Act requests, for any requests made by any of the named plaintiffs in this action.  Declaration of David M. Hardy, ¶ 4.  <u>Id.</u>

2.     Any FOIA request properly made to, and received by, the FBI since before July 1, 2004 should appear in the FDPS system.  <u>Id.</u>

3.     This search yielded negative results for the FBI's receipt or possession of any FOIA requests from any of the named plaintiffs in this action from July 1, 2004 to the present. <u>Id.</u>

4.     The FBI has no record of having received either of the FOIA requests alleged to

have been made to it or any other FOIA request from any of the plaintiffs.  Id.

     5.    None of the FOIA requests allegedly made to the FBI were mailed to FBI headquarters or any local FBI field office as required by Department of Justice regulations.  Compl., Exh. 1.

The Department of State

*Request 1178*

     6.    The only requests properly received by the Department of State's FOIA Office consist of two requests forwarded to that office by Mr. Tiffany dated March 15, 2005 and April 3, 2005.  Grafeld Decl., ¶ 8, 18, 28 & Exhs. 1-4, 6.

     7.    The March 15, 2005 ("request 1178") contained three attachments.  Grafeld Decl., ¶ 8.

     8.    The first attachment to request 1178 is captioned "FOIA Request #10-31-04," is dated October 31, 2004, and is nominally from all three plaintiffs, although it is unsigned. Grafeld Decl., Exh. 2.

     9.    The second attachment to request 1178 consists of a letter captioned "Appeal of FOIA Request #1 01-10-05," dated January 21, 2005, and is nominally from all three plaintiffs as well as Wahid Rasuli Bandaras, although it too is unsigned. Grafeld Decl., Exh. 3.

     10.    The third attachment to request 1178 is captioned "FOIA Request #1-31-05 Kabul," is dated January 31, 2004, and is again nominally from all three plaintiffs, although it is unsigned.  Grafeld Decl., Exh. 4.

     11.    The Department of State responded to request 1178 by letter dated April 25, 2005.

Grafeld Decl., ¶¶ 13-16 & Exh. 5.

12.    That letter noted that the Department "has no record of receipt of any prior FOIA requests from Messrs. Idema, Caraballo, and/or Bennett" and that it is therefore "premature to process the appeal letter" forward as the second attachment to request 1178.  Id., Exh. 5 at 1.

13.    The Department's letter also noted that it would treat the first and third attachments to request 1178 as a new FOIA request from Mr. Tiffany, but noted that "before we can proceed with the processing of this request, we require additional information and clarification and valid authorizations."  Grafeld Decl., Exh. 5 at 1.

14.    The letter noted that "under the provisions of the FOIA and the Privacy Act" private information about individuals cannot be given to third-parties absent the subject individuals' written consent, and explained the Department's requirements regarding such written consent.  Id. at 2.  The letter thus asked Mr. Tiffany either to provide the written consents as described in the letter or to advise the Department that he is unable to provide such authorizations.  Id. at 3.

15.    The letter sought clarification regarding the scope and nature of the documents being requested.  Id. at 3-5.

16.    In closing, the letter noted that "[y]our request has been closed in our system pending receipt of the materials described in this letter.  If you wish to pursue this request, please send us the authorizations and additional information and clarification described herein."  Id. at 5.

17.    Neither Mr. Tiffany nor any of the plaintiffs has ever responded to this letter.  Grafeld Decl., ¶ 17.

*Request 1545*

18.　　The April 3, 2005 request received by the Department of State from Mr. Tiffany ("request 1545") seeks records regarding two Afghan judges.  Grafeld Decl., ¶ 18 & Exh. 6.

19.　　The Department of State responded to request 1545 by letter to Mr. Tiffany dated April 25, 2005.  Grafeld Decl., ¶¶ 19-20 & Exh. 7.

20.　　The letter noted, <u>inter alia</u>, that "under the provisions of the FOIA and the Privacy Act, access to information about individuals, in this case Judge Ismail Abed and former Taliban Judge Abdul Basset Bakhtyari, cannot be given to unauthorized third parties absent the individuals' written consent,"and explained the Department's requirements regarding such written consent.  Grafeld Decl., Exh. 7 at 2.  The letter thus asked Mr. Tiffany either to provide the written consents as described in the letter or to advise the Department that he is unable to provide such authorizations.  <u>Id.</u> at 3.

21.　　The letter also sought additional identifying information with respect to the individuals about whom records were sought, including dates and places of birth, as well as "as full [a] description as possible of incidents, meetings, events, persons involved, etc., pertaining to the documents requested."  <u>Id.</u>

22.　　The letter concluded by noting that the request had been administratively closed in the Department's system, and that if Mr. Tiffany still wished to pursue his request, he should resubmit two separate requests (one each pertaining to each of the individuals about whom he sought records as well as the additional information requested in the letter.  <u>Id.</u> at 5.

23.　　Neither Mr. Tiffany nor any of the plaintiffs has ever responded to this letter. Grafeld Decl., ¶ 23.

24.     The Department of State also received a FOIA request from plaintiff Jack Idema, dated March 31, 2004 – but postmarked April 5, 2005 and received May 4, 2005 – seeking the exact same records sought by Mr. Tiffany in request 1545.  See Grafeld Decl., ¶ 21 & Exh. 8.

25.     Mr. Idema's request expressly requested that the Department "provide a copy of [responsive documents and other FOIA correspondence] to [Mr. Idema's] attorney," John Tiffany.  Grafeld Decl., Exh. 8 at 2.

26.     In light of the substantially similar nature of Mr. Tiffany's April 3, 2005 request and Mr. Idema's March 31, 200[5] request, and Mr. Idema's request that copies of records responsive to his request also be sent to Mr. Tiffany, a Department of State staff member telephoned Mr. Tiffany on May 5, 2005, the day after Mr. Idema's request was received by the Department.  Grafeld Decl., ¶ 22.  In the course of that conversation, Mr. Tiffany agreed that Mr. Idema's March 31, 2004 request was duplicative of request 1545 (Mr. Tiffany's April 3, 2005 request), and that the two requests could jointly be considered a single case.  Id.  Accordingly, Mr. Idema's request was considered part of request 1545, which had been administratively closed pending further response from Mr. Tiffany.

*Handwritten Notes Located in Embassy Files*

27.     Subsequent to the initiation of this litigation, the Department of State undertook a search of the consular files at the U.S. Embassy in Kabul to ascertain whether the Embassy had received any of FOIA requests from any of the plaintiffs.  Grafeld Decl., ¶ 24.  That search turned up two documents received from one of more of the plaintiffs that reference FOIA.  Grafeld Decl., ¶ 24 & Exhs. 9-10.

28.     The first document, dated August 11, 2004, and signed by the three plaintiffs,

consists of a handwritten note asking for various things, including aspirin, ibuprofen, vitamins, anti-fungal foot powder, paper and pens, and various documents.  Grafeld Decl., Exh. 9.

29.    Other than passing references to the FOIA in the body of the document, nothing on the face of the document identifies it as a FOIA request.  Id.

30.    The document was neither addressed or sent to the Department of State FOIA Office.  Id.

31.    Accordingly, the document was not processed as a FOIA request.  Grafeld Decl., ¶ 25.

32.    The second handwritten document is a letter from plaintiff Edward Caraballo, dated November 2, 2004 and signed November 9, 2004.  Grafeld Decl., Exh.10.  It seeks, in almost verbatim language, documents regarding the same issues as those sought in the first attachment to Mr. Tiffany's March 15, 2005 request (request 1178), to which the Department of State responded by letter dated April 25, 2005, as discussed above.  Grafeld Decl., Exhs. 2, 10.

33.    The second handwritten was not addressed or sent to the Department of State FOIA office, and was not received by that office until after the initiation of the instant litigation, at which time the Department had already responded to the substantially identical request forwarded by Mr. Tiffany.  Grafeld Decl., ¶ 26.

34.    Accordingly, this document was not processed as a separate FOIA request.  Id.

35.    The Department of State has not received any other FOIA requests or FOIA related communications from Mr. Tiffany or any of the plaintiffs to this action.  Grafeld Decl., ¶ 28.

6

The USMS

36.     No United States Marshal Service (USMS) office in North Carolina received any FOIA request from Mr. Tiffany.  Bordley Decl., ¶ 29.

37.     The USMS did receive, on January 11, 2005, a faxed FOIA request letter from Mr. Tiffany dated January 10, 2005.  Id., ¶ 2 & Exh. 1.

38.     The request sought certain documents concerning Jack Idema, Viktoria Idema and USMS employees.  Id.

39.     The USMS responded to Mr. Tiffany's request by letter to him dated January 19, 2005, advising him that in order for the USMS to process his request, Mr. Tiffany needed to provide signed, written authorizations from Jack and Viktoria Idema authorizing disclosure of any USMS records pertaining to them to Mr. Tiffany.  Bordley Decl., ¶ 4 & Exh. 2.

40.     By facsimile dated February 4, 2005, Mr. Tiffany forwarded to the USMS an executed Certification of Identity Form, DOJ-361, for Viktoria Idema, signed on February 3, 2005, authorizing the release of records relating to Ms. Idema to Mr. Tiffany.  Bordley Decl., ¶ 6 & Exh. 4.

41.     By letter dated February 16, 2005, the USMS acknowledged receipt of Viktoria Idema's Privacy Act waiver.  Bordley Decl., ¶ 7 & Exh. 5.  As Mr. Tiffany had failed to provide a similar waiver from Jack Idema, Mr. Tiffany was advised that his failure do so would result in the USMS taking no further action on his request.  For Mr. Tiffany's convenience, another DOJ-361 form was enclosed.  Id.

42.     Neither Mr. Tiffany nor Mr. Idema (nor anyone else) has ever provided the USMS with a signed, written authorization to release records pertaining to Mr. Idema to Mr. Tiffany.

Id., , ¶ 8.

43.    By letter dated November 23, 2005, the USMS responded to Mr. Tiffany's request.  Bordley Decl., ¶ 9 & Exh. 7.

44.    The response reiterated that the USMS would take no further action with respect to Mr. Tiffany's request insofar as it seeks records pertaining to Jack Idema until such time as Mr. Tiffany provided a signed, written authorization from Mr. Idema permitting the release of such information to Mr. Tiffany.  Id.

45.    The response also informed Mr. Tiffany that the USMS located five documents consisting of a total of nine pages responsive to items 1, 7 and 8 of his request.  Id.  Those documents were enclosed with the response.  Id.

46.    The response also informed Mr. Tiffany that the USMS had located no records responsive to items 2, 3 and 5 of his request.  Id.

47.    The response informed Mr. Tiffany that the records responsive to items 4 and 6 of his request – which sought the USMS employment roster for the entire state of North Carolina and employment information for Marshals and other federal government employees who participated in Viktoria Idema's arrest – were being withheld from disclosure pursuant to FOIA Exemptions 6 and 7(C).  Id.

*Records regarding Jack Idema*

48.    In reaching the determination that any records regarding Mr. Idema that might exist in the records and files of the USMS would not be releasable to a third-party absent a Privacy Act waiver from Mr. Idema, the USMS considered the fact that if any records pertaining to Mr. Idema do exist in the records and files of the USMS, they would likely be non-public

records maintained in the Warrant Information Network (WIN), JUSTICE/USM-007 system of records or the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005 system of records. Bordley Decl., ¶ 10.

49.     Records maintained in these systems of records are compiled for law enforcement purposes in connection with the USMS's execution of Federal arrest warrants, investigation of fugitive matters, and receipt, processing, transportation and custody of federal prisoners, see 28 U.S.C. § 566(e)(1)(B); 28 C.F.R. § 0.111(a)(j)(k),(q); 18 U.S.C. § 4086.   Bordley Decl., ¶ 10.

50.     Records maintained in these systems of records consist of personal data, including criminal history records, on the individual subjects of investigatory interest and their associates, witness interviews, and other records documenting efforts by the USMS to locate and apprehend individual fugitives and other wanted persons; and records of criminal custody by the U.S. Marshal.  Id.

51.     Given the private nature of such information, information about an individual contained in the WIN and PPM/PTS systems would not be released without the individual's consent, except to further law enforcement purposes.  Id.

52.     Because the release of any records pertaining to Mr. Idema that might be contained in the WIN and/or PPM/PTS systems of records would be prohibited, the USMS did not conduct a search for such responsive records relating to Mr. Idema, but instead informed Mr. Tiffany that no further action would taken on his request insofar as it pertained to records relating to Mr. Idema.   Bordley Decl., ¶¶ 10-12.

*Records Regarding Viktoria Idema*

53.     The USMS searched for any and all records regarding Ms. Idema in those systems

of records where responsive records were likely to be found, if they existed.  Id., ¶ 13.

54.     The USMS conducted a search for records concerning Viktoria Idema in the USMS offices identified in Mr. Tiffany's request, i.e., the Eastern, Middle, and Western Districts of North Carolina, the Eastern, Northern, Southern, and Western Districts of Texas, as well as USMS headquarters in Washington, D.C.  Id.

55.     In conducting these searches, the USMS used Viktoria Idema's name, as well as each of the aliases or variants of her name and each of the personal identifiers (e.g., date of birth and social security number) provided in Mr. Tiffany's request.  Id.  Such a search would turn up any records regarding Ms. Idema as well as any records relating to her arrest.  Id.

56.     The USMS district offices listed above searched for responsive records in the WIN and PPM/PTS systems of records described above, as those are the systems of records likely to contain documents responsive to Mr. Tiffany's request.  Id.  Decentralized segments of these two systems are located in each of the 94 USMS district offices and consist of the computerized databases and the manual file records corresponding to the electronic indices.  Id.  These systems of records are searched by an individual's name and/or personal identifier.  Id.

57.     As a result of this search, records pertaining to Viktoria Idema were located by the USMS office in the Eastern District of North Carolina, which were produced to Mr. Tiffany.  Id.

58.     In addition to the search for documents in the USMS district offices described above, the USMS FOIA staff also searched the USMS Headquarters Investigative Services WIN system of records and the Judicial Security Division's Inappropriate Communications/Threat Information System (IC/TIS), JUSTICE/USM-009, system of records, in an effort to locate any and all records pertaining to Viktoria Idema. Id., ¶ 15.

10

59.     These are the only headquarters systems of records deemed reasonably likely to contain documents regarding Viktoria Idema such as those sought in Mr. Tiffany's request.  Id.

60.     As with the searches of the WIN and PPM/PTS systems of records by the USMS district office, the searches of the WIN and IC/TIS systems of records at USMS headquarters were conducted using Viktoria Idema's name, as well as each of the aliases or variants of her name and each of the personal identifiers (e.g., date of birth and social security number) provided in Mr. Tiffany's request.  Id., ¶ 16.

61.     As a result of this search, additional records pertaining to Viktoria Idema were located by the USMS, and these records were produced to Mr. Tiffany.  Id.

62.     No records responsive to items 2 and 3 of the request – seeking "documents between" the USMS, various government agencies and others regarding Mr. and Ms. Idema, and certain "documents between" the U.S. government and the State of Texas – were located by the USMS.  Id.

*Item 7 of the Request*

63.     The searches conducted above located the report of investigation describing the arrest of Ms. Idema (i.e., the "after-action report" sought in the request) as that report was related to the arrest, and would have similarly identified any other documents related to the arrest of Ms. Idema.  Id., ¶ 18.

64.     None of the individuals who conducted the arrest of Ms. Idema were U.S Marshals.  Id.

65.     The USMS, therefore, would have no records regarding "evaluations, awards, reprimands" for such individuals.  Id.

66.     Accordingly, no documents responsive to this aspect of Mr. Tiffany's request were located.  Id.

*Item 5 of the Request*

67.     Fayetteville is in the Eastern District of North Carolina. Id., ¶ 19.

68.     The USMS office in the Eastern District of North Carolina does not maintain vehicle logs for the vehicles assigned to its employees.  Id.

69.     Accordingly, no records responsive to Item 5 of of Mr. Tiffany's request exist.  Id.

*Withholding of Records and Information*

70.     Of the nine pages of responsive records released to Mr. Idema, six pages were released in their entirety, and three pages were released with information redacted and withheld pursuant to Exemption 7(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C).  Id., ¶ 20.

71.     Records responsive to items 4 and 6 of Mr. Tiffany's request were withheld in their entirety pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C).  Id.

72.     The information redacted from the records released to Mr. Idema consisted of the following: (1) a one-page Status Report dated January 11, 2005, had the name of the law enforcement officer who prepared the report redacted from it; and (2) a two-page Report of Investigation dated January 11, 2005, had the names of law enforcement officers, and the names of, and information identifiable to, third party individuals redacted from it.  Bordley Decl., ¶¶ 21-23.

73.     Specifically, the name of the law enforcement officer who prepared the report of investigation, his signature, and the name of the criminal investigator who approved the report were redacted; the North Carolina registration numbers of two vehicles referenced in the report,

and one of the vehicle owners' names, were redacted; the names of three third-party individuals referenced in the report were redacted; and the name of a Fayetteville, N.C. police officer referenced in the report was redacted.  Id.

74.    The USMS withheld from disclosure the USMS employment roster for the State of North Carolina, as well as the employment information of those Marshals and/or other federal government employees who participated in the arrest of Viktoria Idema on January 7, 2005, pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C).  Bordley Decl., ¶ 25.

75.    The USMS believes that public disclosure of the names of USMS employees, as well as the names and other employment information pertaining to USMS and other government employees who may have participated in the arrest of Viktoria Idema, reasonably could be expected to subject such individuals to unnecessary public attention, scrutiny, harassment, and annoyance, both in the course of performing their official duties and in their private lives, and could possibly pose a danger to their life or physical security.  Bordley Decl., ¶ 27.

76.    Nor would any apparent public interest be served by the disclosure of such information, as it is unlikely to shed light on the operations of government.  Id.

77.    Other than the records discussed above, no other records responsive to Mr. Tiffany's requests were located as a result of the searches conducted by the USMS.  Id., ¶ 28.

DoD

_Office of the Secretary of Defense and Joint Staff_

78.    Due to the size and complexity of the DoD, there is no central repository for all DoD records.  Declaration of William T. Kammer, ¶ 2.

13

79.     The several components of the DoD, including the military departments, separate defense agencies and Combatant Commands (e.g., Department of the Army, Defense Intelligence Agency, and United States Central Command) operate their own FOIA offices to respond to requests for records for which they are responsible.  Id.

80.     The Office of Freedom of Information ("OFOI") at the Pentagon is responsible for processing FOIA requests for documents within the possession and control of the Office of the Secretary of Defense (OSD) and the Joint Staff.  Id., ¶ 1.

81.     On May 6, 2005, OFOI received two FOIA requests, dated March 31, 2005, and April 4, 2005, respectively, from Mr. Jack Idema.  Kammer Decl., ¶ 10 & Exhs. 6-7.

82.     The request from Mr. Idema dated March 31, 2005 sought records regarding certain correspondence and other communications between Fox News and "CENTCOM, DIA, DOD, or any branch of the Department of the Army," and was assigned case number 05-F-1499.  Kammer Decl., ¶ 10 & Exh. 6.

83.     OFOI subsequently received a duplicate of this request from Mr. Idema.  Id.

84.     The request from Mr. Idema dated April 4, 2005 sought records regarding any Department of Defense or Department of Army awards to Linda Vester of Fox News, any Fox News employee, or Fox News itself, and was assigned case number 05-F-1501.  Kammer Decl., ¶ 10 & Exh. 7.

85.     OFOI subsequently received a duplicate of this request as well.  Id.

86.     Both requests from Mr. Idema also included a version of the following statement: "Any attempt to redirect or delay this request (such as telling me to send this request to CENTCOM or Bagram, etc, etc) will be considered a denial under the FOIA laws and will be

14

immediately followed with an appeal, and if denied, a lawsuit."  Kammer Decl., ¶ 10 & Exhs. 6-7.

87.     OFOI interpreted this statement as an indication that Mr. Idema did not want his requests referred to other offices or components that might have records responsive to the requests.  Id., ¶ 10.

88.     The receipt of Mr. Idema's requests was acknowledged by an interim response letter to Mr. Idema dated June 6, 2005.  Id., ¶ 12 & Exh. 8.   In that letter, Mr. Idema was advised that DoD operates a decentralized FOIA program; that OFOI is responsible for responding to FOIA requests for records of the components of the OSD and the Joint Staff; that the other components of DoD operate their own FOIA offices; and that in light of Mr. Idema's request that his requests not be redirected to any other entity, the processing of his request would be confined to OSD and the Joint Staff.  Id.

89.     Given the subject matter of these requests, OFOI determined that, to the extent responsive records exist within OSD or the Joint Staff, the Office of the Assistant Secretary of Defense for Public Affairs (PA) would be the only office likely to have responsive documents. Id., ¶ 11.

90.     Within PA, searches for records responsive to both requests were conducted by the Press Operations Office, which handles responses pertaining to media requests.  Id., ¶ 13.

91.     The files maintained by the Press Desk Officers responsible for the type of information requested by plaintiff were searched.  Id.

92.     These Officers' files are the only ones within PA reasonably expected to contain documents responsive to plaintiff's requests, if such documents exist.  Id.

93.    Both electronic and hard copy searches were conducted of the Press Desk Officers' files, using the search terms Afghanistan, Jack Idema, JK Idema and J. Keith Idema for request 05-F-1499 and the search terms DoD awards, Linda Vester, and Fox News for request 05-F-1501.  Id.

94.    PA did not locate any records responsive to either of Mr. Idema's requests.  Id.

95.    By letter dated January 18, 2006, OFOI responded to Mr. Idema and informed him that no records responsive to his request were located within OSD and the Joint Staff.  Id. & Exh. 9.

96.    On March 24, 2005, OFOI received a FOIA request letter dated March 15, 2005, from Mr. Tiffany.  Id., ¶ 24 & Exh. 1.

97.    The request, which noted that Mr. Tiffany was "attorney-of-record" for Jack Idema and sought certain records regarding a Captain Brendan J. Donnelly, was assigned case number 05-F-1238.  Id.

98.    OFOI also came into possession of an identical request from Mr. Tiffany dated March 7, 2005.  Id., ¶ 9 n.1. As the two requests are identical, the March 7 request was considered to be part of case number 05-F-1238.  Id.

99.    Mr. Tiffany's request sought records likely maintained by the Department of the Army, the Defense Intelligence Agency, and/or United States Central Command.  Id., ¶ 4.

100.    Given the nature of documents sought, it was determined that no component of OSD or the Joint Staff would maintain the types of records sought in the request.  Id.

101.    Accordingly, Mr. Tiffany was advised by e-mail dated March 29, 2005, that his request was misdirected, that the Department of the Army, Defense Intelligence Agency and U.S.

Central Command would likely have cognizance over the records he requested, and that each of these entities operates its own FOIA offices. Id., ¶ 5 & Exh. 2.

102.    The e-mail provided Mr. Tiffany with both e-mail and U.S. mail addresses at which he could seek such records from these components. Id.

103.    The e-mail also informed Mr. Tiffany that his request was being closed. Id.

104.    By two separate letters dated April 4, 2005, Mr. Tiffany (a) sent a second FOIA request seeking substantially the same records as those sought in case number 05-F-1238, and (b) appealed the response set forth in the e-mail dated March 29, 2005. Id., ¶ 6 & Exh. 3.

105.    The second request relating to Captain Donnelly was considered part of case number 05-F-1238, and Mr. Tiffany's appeal was assigned case number 05-F-1011(A). Id., ¶ 6.

106.    On April 4, 2005, a member of OFOI's staff spoke with Mr. Tiffany by telephone and explained to him the decentralized nature of the DoD FOIA program. Id., ¶ 7. Mr. Tiffany indicated that he sent his request to the other DoD agencies identified by OFOI. Id.

107.    By letter dated April 22, 2005, the OFOI acknowledged receipt of Mr. Tiffany's April 4, 2005 request and appeal. Id., ¶ 8 & Exh. 4.

108.    By letter dated January 18, 2006, OFOI responded to Mr. Tiffany regarding both his appeal (05-F-1011(A)) and his second request pertaining to case number 05-F-1238. Id., ¶ 9 & Exh. 5.

109.    The response again informed Mr. Tiffany that the "documents [he] seek[s] would not be maintained by the Office of the Secretary of Defense or Joint Staff, and, therefore, would not be under the purview of [OFOI]." Id.

110.    The response also again informed Mr. Tiffany that DoD operates a decentralized

17

FOIA program, suggested he submit his request to the previously-identified components likely to have cognizance of the records he seeks, and enclosed the March 29, 2005 e-mail providing addresses for those components' FOIA offices.  Id.

111.    Other than the requests described above, OFOI has not received any other FOIA requests from Mr. Tiffany or any of the plaintiffs in this case.  Id., ¶ 14.

*Defense Intelligence Agency*

112.    The only FOIA request that DIA received from any of the plaintiffs or from Mr. Tiffany consisted of an April 4, 2005 letter from Mr. John Tiffany forwarding two FOIA requests to the DIA, both seeking records regarding Captain Donnelly.  Declaration of Margaret A. Bestrain, ¶ 5 & Exh. 1.  The first of these requests was dated March 15, 2005 and addressed to the FOIA Offices of the Department of the Army and the Department of Defense at the Pentagon. Id.  The second request was dated April 4, 2005 and was addressed to the DIA.  Id.

113.    By letter dated April 21, 2005, the DIA responded to Mr. Tiffany's request and asked that he submit "in writing a notarized or sworn authorization from Brendan J. Donnelly to release records" to Mr. Tiffany.  Bestrain Decl., ¶ 6 & Exh. 2.  The DIA also asked Mr. Tiffany to provide additional identifying information with respect to Captain Donnelly for use in conducting a search for responsive records.  Id.

114.    By letter dated May 6, 2005, Mr. Tiffany responded to the DIA.  His response stated, *inter alia*, that "we are not requesting the disclosures of personal information and advise you again that personal information such as SSNs, DOBs etc may be redacted."  Bestrain Decl., ¶ 7 & Exh. 3.  Mr. Tiffany did not provide an authorization from Captain Donnelly to release records to Mr. Tiffany.  Id.

18

115.    Based on the substance of Mr. Tiffany's request, the DIA determined that five DIA components had potential cognizance over documents that would, if discovered, be responsive to Mr. Tiffany's request.  Id., ¶ 8.

116.    Those components are: the Directorate for Administration, the Directorate for Information Management, the Directorate for Human Intelligence, the Joint Military Intelligence College, and the Office of the Inspector General.  Id.

117.    Each of these five Directorates was tasked with conducting a comprehensive search of their files for potentially responsive documents, based on their respective roles in the intelligence collection, analysis and dissemination mission of DIA.  Id.

118.    Each of these Directorates searched those databases likely to contain responsive records for all records concerning Captain Donnelly.  Id., ¶¶ 9-13.  No responsive documents were discovered.  Id.

119.    The DIA also conducted a separate search of the same component files described above for call records matching the telephone number 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-2641, as specified in the March 15 request attached to Mr. Tiffany's request.  Id., ¶ 14.  The search revealed that the neither the phone number 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-2641 nor any terminal to which it was assigned is under the ownership or control of DIA.  Id.  No responsive records concerning the phone number have been found.  Id.

120.    By letters dated December 7, 2005, and February 9, 2006, Mr. Tiffany was informed that no records responsive to his request were found.  Id., ¶ 15.

121.    Other than the April 4 request from Mr. Tiffany, the DIA has not received any other FOIA requests from Mr. Tiffany or any of the plaintiffs in this action.  Id., ¶ 16.

*The Army*

122.    Like the DoD itself, the Army also operates a decentralized FOIA program, wherein each office or military installation maintains its own records and operates its own FOIA office.  Declaration of Barbara Garris, ¶ 2.

123.    The Army FOIA and Privacy Act Office ("FOIA/PA Office") – to which Mr. Tiffany forwarded his requests – is not a repository for Department of Army records.  Id. Rather, its mission is to facilitate access to Army records.  Id.

124.    On April 8, 2005, the Army FOIA/PA Office received a FOIA request dated April 4, 2005, from Mr. Tiffany.  Id., ¶ 3 & Exh.  1.

125.    As with Mr. Tiffany's forwarded request to the DIA, the request he sent to the Army consisted of a cover letter and two attached FOIA requests.  Id.  The first attached request was a copy of the March 15, 2005 request he had sent to the Pentagon, and the second attached request was an April 4, 2005 request addressed to the Army's FOIA and Privacy Act office, identical to the April 4 requests Mr. Tiffany had sent to the Pentagon and the DIA.  Id.

126.    The Army FOIA/PA Office determined that the National Personnel Records Center (NPRC) in St. Louis, Missouri, would be the agency likely to have records responsive to Mr. Tiffany's request.  Id., ¶ 4.

127.    Because Mr. Tiffany's request neglected to provide personal identifiers (such as Social Security number and date of birth) regarding Captain Donnelly (which would assist the NPRC in locating relevant records), rather than refer Mr. Tiffany's request to the NPRC for processing, the FOIA/PA office responded to Mr. Tiffany's request by letter dated April 27, 2005.  Id., ¶ 4 & Exh. 2.

128.    That response advised Mr. Tiffany that the FOIA/PA Office is not a repository for Department of Army documents and therefore does not have records responsive to his request; that such records are likely to be maintained by the NPRC; provided him with NPRC's mailing address and Website address; and advised him that he should write to NPRC and provide the full name, Social Security number and/or date of birth of the subject of his request.  Id.

129.    The response also advised Mr. Tiffany that the release of certain information to a third-party requires a release authorization from the subject of the file.  Id.

130.    Mr. Tiffany did not respond to this letter or otherwise pursue his FOIA request further with this the Army's FOIA/PA Office.  Id., ¶ 4.

131.    The Army FOIA/PA Office has not received any other FOIA requests from Mr. Tiffany or any of the plaintiffs in this action.  Id., ¶¶ 5-7.

*U.S. Central Command*

132.    Mr. Tiffany also forwarded his March 15 and April 4 requests seeking records regarding Captain Donnelly to U.S. Central Command ("CENTCOM").   Declaration of Lieutenant Colonel Patrick N. Joyner, ¶ 3 & Exh. 1.

133.    On or about May 4, 2006, CENTCOM forwarded that portion of Mr. Tiffany's request seeking copies of awards and other military records to the Army's Human Resources Command in St. Louis, Mo. for further processing.  Id., ¶ 4.

134.    By letter dated May 5, 2006, CENTCOM informed Mr. Tiffany of this referral, and indicated that the remaining portions of his request were being processed by CENTCOM. Id., ¶ 4 & Exh. 2.

135.    CENTCOM itself undertook a multi-pronged search for responsive records.  First,

it identified those areas within CENTCOM headquarters where responsive records might exist –

the headquarters' Intelligence Directorate as well as its Special Operations Command, Central

Command – and searched for any responsive records in electronic files, filing cabinets and safes.

Id., ¶¶ 5, 7.  No responsive records were found.  Id., ¶¶  5, 9.

136.    Next, Mr. Tiffany's request was sent to the FOIA office of the Combined Forces

Coalition – Afghanistan (CFC-A).  Id., ¶ 7.

137.    On March 24, 2006, CFC-A reported that it had not located any records

responsive to the request (although it did identify a soldier with a similar name who had received

a bronze star).  Id., ¶ 10 & Exh. 4.

138.    After receiving this response, CENTCOM renewed communication with Human

Resources Command concerning that portion of Mr. Tiffany's request relating to a Bronze Star,

and was informed that Human Resources Command would respond to that portion of the request.

Id., ¶ 11.

139.    Mr. Tiffany was informed that no responsive records were located at CENTCOM

by letter dated August 25, 2006.  Id., ¶ 12 & Exh. 5.

140.    CENTCOM has not received any other FOIA requests from Mr. Tiffany or any of

the plaintiffs to this case.  Id., ¶ 13.

*Army Human Resources Command*

141.    CENTCOM forwarded Mr. Tiffany's request to the Army's Human Resources

Command in St. Louis ("HRC-S") in early May 2006.  Declaration of Karen Flinkstrom, ¶ 4 &

Exh. 1.

142.    By letter dated June 1, 2006, HRC-S issued an interim response to Mr. Tiffany

22

acknowledging receipt of the requests.  Id., ¶ 8 & Exh. 3.

143.    Based on Mr. Tiffany's requests, HRC-S conducted a search of the Personnel

Electronic Records Management System (PERMS) and the Soldier Management System (SMS)

for responsive documents, as those systems (which are described in greater detail in the

Flinkstrom Declaration) would be the likely repositories of any responsive documents in HRC-S

custody.  Id., ¶ 9.

144.    HRC-S staff searched both systems for any documents related to CPT Brendan

Donnelly.  Id.

145.    The HRC-S search identified five pages of records responsive to Mr. Tiffany's

request, and by letter dated June 6, 2006, HRC-S provided Mr. Tiffany with those five pages of

responsive records.  Id., ¶ 10 & Exh. 4.

146.    Personal information was redacted from these documents pursuant to FOIA

Exemption 6, 5 U.S.C. § 552(b)(6), as release of that information would result in a clearly

unwarranted invasion of Captain Donnelly's personal privacy.  Id., ¶ 10.

147.    Specifically, Captain Donnelly's Social Security number, date of birth, home and

other address information, family information, service-related information, and other personal

information were all redacted from the documents provided to Mr. Tiffany.  Id., ¶ 11 (describing

in detail information redacted).

148.    No documents pertaining to a Rolex watch or email messages were located by

HRC-S.  Id., ¶ 10 & Exh. 4.

149.    With the exception of the April 4 request discussed above, HRC-S has not

received any other FOIA requests from Mr. Tiffany or any of the plaintiffs in this action.  Id.,

¶ 14.

Dated: March 30, 2007.                    Respectfully submitted,

                                          PETER D. KEISLER
                                          Assistant Attorney General

                                          JEFFREY A. TAYLOR
                                          United States Attorney

                                          ELIZABETH J. SHAPIRO
                                          Assistant Branch Director


                                          /s/ Ori Lev
                                          ORI LEV, DC # 452565
                                          Senior Trial Counsel
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          P.O. Box 883
                                          Washington, DC  20044
                                          Tel: (202) 514-2395
                                          Fax: (202) 318-7589

                                          *Attorneys for Defendants*